SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Kassey Benjamin (A-43-15) (076612)**

**Argued November 7, 2016 — Decided April 5, 2017**

**SOLOMON, J., writing for a majority of the Court.**

In this appeal, the Court determines whether a defendant seeking a waiver of the mandatory minimum sentence under the Graves Act is entitled to discovery of the prosecutor's files from cases in which other defendants were granted waivers of the mandatory minimum penalty.

In July 2011, defendant and a few friends stood in the "drive-thru" lane of a McDonald's restaurant, blocking cars from passing. A vehicle approached, and one of its occupants yelled for the men to move. A verbal altercation ensued, and defendant brandished a firearm. Although defendant did not point the handgun at anyone, he threatened to fire it. Defendant was subsequently arrested and charged with various firearm-related offenses, including second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), which is subject to the mandatory minimum sentence under the Graves Act.

The Graves Act provides that, for some first-time offenders, the assignment judge, upon motion of the prosecutor or request of the sentencing judge with the prosecutor's approval, may waive the mandatory minimum sentence and impose either probation or a reduced mandatory custodial term. N.J.S.A. 2C:43-6.2 (section 6.2). As a first-time offender, defendant filed a motion asking the trial court to refer his case to the assignment judge. The prosecutor opposed the motion as procedurally improper because under section 6.2 a sentencing court, not the trial court, is authorized to refer the case to the assignment judge—and only with the prosecutor's approval. The prosecutor did not provide a written statement of reasons for his refusal to seek a waiver; the prosecutor only stated that the State did not believe that the interests of justice dictated a waiver in defendant's case.

Around this time, defendant filed a request under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, for various documents, including police reports, indictments, and plea forms for all Graves Act cases between 2010 and 2012 in which waivers were granted. According to defendant, the only way to prove that the prosecutor abused his discretion in denying a waiver was to compare the facts of his case to the facts of other similar cases in which waivers were granted. The Middlesex County Prosecutor's Office denied his request.

Ultimately, defendant pled guilty to possession of a weapon for an unlawful purpose, and the State agreed to recommend that he be sentenced as a third-degree offender. The court instructed the prosecutor to state on the record the reasons for refusing to move for a waiver. The prosecutor responded that defendant's actions went beyond mere possession of a firearm and were exactly the type of conduct the Graves Act seeks to deter.

Defendant appealed. The Appellate Division vacated defendant's guilty plea in the interest of "fundamental fairness," 442 N.J. Super. 258, 260 (App. Div. 2015), and remanded the case for proceedings consistent with State v. Alvarez, 246 N.J. Super. 137, 146-49 (App. Div. 1991), which allows defendants to appeal the denial of a waiver to the assignment judge upon a showing of patent and gross abuse of discretion by the prosecutor. Additionally, the panel interpreted the Attorney General's Directive to Ensure Uniform Enforcement of the "Graves Act" (Oct. 23, 2008, as corrected Nov. 25, 2008) (Directive) as requiring prosecutors to memorialize their reasons for denying a Graves Act waiver to ensure that waiver decisions are not disparate. The panel instructed the prosecutor on remand to give defendant a written statement of reasons for the denial and allowed defendant to renew his request for discovery of files related to Graves Act waiver decisions by the prosecutor.

The Court granted the State's petition for certification limited to the issue of "whether a defendant seeking a waiver of a mandatory sentence under the Graves Act has the right to discovery of the prosecutor's files on previous applications for Graves Act waivers." 224 N.J. 119 (2016).

**HELD:** Defendants are not entitled to discovery of the prosecution's files for cases in which Graves Act waivers have been granted to other defendants.

1.  Underlying the Graves Act is a legislative intent to deter individuals from committing firearm-related crimes by calling for a mandatory minimum term of imprisonment for those convicted of Graves Act offenses.  To mitigate the undue severity that might accompany the otherwise automatic application of the mandatory minimum sentence under the Graves Act, the Legislature included section 6.2, a limited exception that allows certain first-time offenders to receive a reduced penalty if the imposition of a mandatory term would not serve the interests of justice.  Under that section, an eligible defendant may be sentenced to either probation or a one-year custodial term during which he or she is disqualified from being paroled.  (pp. 12-14)

2.  In 2008, the New Jersey Attorney General issued a directive "to ensure statewide uniformity in the exercise of prosecutorial discretion in implementing" the Graves Act.  Directive, supra, at 10.  Once a prosecutor moves for or consents to a waiver, the Directive requires the prosecutor to specify which reduced penalty would best serve the "interests of justice":  either a mandatory minimum one-year period of incarceration or a probationary term.  Id. at 14.  The Directive also contains specific record-keeping requirements, including the documentation of aggravating and mitigating circumstances, case-specific memorializations of the reasons for the prosecutor's decision, and the maintenance of separate cumulative files, which facilitate periodic audits by the Attorney General.  In addition, on a quarterly basis, prosecutors must report to the Attorney General the number of pre- and post-indictment pleas in which the prosecutor moved for, or consented to, a Graves Act waiver.  (pp. 14-16)

3.  In State v. Lagares, 127 N.J. 20 (1992), and State v. Vasquez, 129 N.J. 189 (1992), the Court upheld the statutory delegation of sentencing discretion to prosecutors to waive the Comprehensive Drug Reform Act's mandatory minimum term of incarceration, provided that (1) the Attorney General promulgated guidelines to help prosecutors uniformly apply the statute; (2) prosecutors stated on the record the reasons supporting their decision in order to enable judicial review and ensure compliance with the guidelines; and (3) a court could review and overturn the prosecutor's decision if a defendant demonstrates that the prosecutor acted arbitrarily and capriciously.  (pp. 16-18)

4.  The Graves Act provides the procedural safeguards required by this Court in Lagares and Vasquez.  First, written guidelines exist to channel prosecutorial discretion.  The Directive instructs prosecutors how to uniformly apply the Graves Act and section 6.2.  Second, the Directive requires prosecutors to document their analysis of all the relevant aggravating and mitigating circumstances.  Third, since the Appellate Division's 1991 decision in Alvarez, defendants have been able to seek judicial review of waiver decisions.  The assignment judge retains "ultimate authority" to review the prosecutor's waiver decisions for arbitrariness and discrimination.  Accordingly, the Graves Act affords meaningful judicial review of a prosecutor's decision to deny a Graves Act waiver.  (pp. 18-20)

5.  All case-specific files should contain a statement of reasons which the assignment judge may consider.  Conversely, additional case-specific information is contained in case and cumulative files for administrative reasons because those files function as internal documents.  No case-specific information beyond a statement of reasons was intended to be accessed by a Graves Act defendant seeking to demonstrate that the prosecutor acted arbitrarily.  The Court has never mandated discovery to aid defendants in demonstrating arbitrary and capricious conduct or disparate treatment without a preliminary showing.  To the contrary, it has repeatedly stated that defendants must support their claims by "independently secured evidence."  State v. Sutton, 80 N.J. 110, 120 (1979).  (pp. 20-22)

6.  Defendants are not entitled to discovery of a prosecutor's case-specific memorializations and cumulative files when challenging the denial of a Graves Act waiver in an Alvarez motion because there are sufficient procedural safeguards in place for meaningful judicial review of a prosecutor's waiver decision.  (pp. 22-23)

The judgment of the Appellate Division is **AFFIRMED AS MODIFIED**.

**JUSTICE ALBIN, DISSENTING,** expresses the view that the adversarial process has a role to play in ensuring that waiver decisions do not undermine the goal of uniformity in sentencing and concludes that the right to challenge unconstitutional discrimination or denial of equal protection in Graves Act waiver cases is a hollow right if defendants are denied basic information necessary to assert that right.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion.  JUSTICE ALBIN filed a separate, dissenting opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

KASSEY BENJAMIN,

    Defendant-Respondent.


       Argued November 7, 2016 – Decided April 5, 2017

       On certification to the Superior Court, Appellate Division, whose opinion is reported at 442 N.J. Super. 258 (App. Div. 2015)

       Carol M. Henderson, Assistant Attorney General, argued the cause for appellant (Christopher S. Porrino, Attorney General of New Jersey, attorney).

       Daniel S. Rockoff, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney).

       Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Edward L. Barocas, Legal Director, attorney; Mr. Shalom, Mr. Barocas, and Jeanne M. LoCicero, on the letter brief).


    JUSTICE SOLOMON delivered the opinion of the Court.

    We must determine whether a defendant seeking a waiver of the mandatory minimum sentence under the Graves Act is entitled

to discovery of the prosecutor's files from cases in which other defendants were granted waivers of the mandatory minimum penalty.

The Graves Act prescribes a minimum term of incarceration for certain firearm-related offenses.  For some first-time offenders, the statute contains a provision that allows the assignment judge, upon motion of the prosecutor or request of the sentencing judge with the prosecutor's approval, to waive the mandatory minimum sentence and impose either probation or a reduced mandatory custodial term.  N.J.S.A. 2C:43-6.2 (section 6.2).

In this case, defendant was charged with various firearm-related offenses under the Graves Act.  After the prosecutor denied defendant's request for a waiver of the mandatory penalty, defendant sought discovery of documents from recent cases in which the prosecutor had approved waivers for other first-time offenders.  According to defendant, this would allow him to demonstrate the arbitrariness of the prosecutor's decision.  The prosecutor declined to provide the requested files.

Ultimately, defendant pled guilty to possession of a weapon for an unlawful purpose.  The Appellate Division vacated defendant's conviction, remanded the matter to the trial court, ordered the prosecutor to provide defendant with a written

2

statement of reasons for denying the waiver, and allowed defendant to renew his request for discovery of previously granted waivers.  We granted certification limited to the discovery issue.

We agree with the Appellate Division that, when denying a Graves Act waiver, the prosecutor must provide the defendant with a statement of reasons.  However, we hold that defendants are not entitled to discovery of the prosecution's files for cases in which Graves Act waivers have been granted to other defendants.  We therefore affirm but modify the judgment of the Appellate Division.

I.

The record reveals the following facts and procedural history.  In July 2011, defendant and a few friends stood in the "drive-thru" lane of a McDonald's restaurant in Edison, New Jersey, blocking cars from passing.  A vehicle approached, and one of its occupants yelled for the men to move.  A verbal altercation ensued, and defendant brandished a firearm.  Although defendant did not point the handgun at anyone, he threatened to fire it.

Defendant and his friends ended the confrontation by leaving the McDonald's.  Subsequently, the occupants of the vehicle called the police.  Responding officers observed defendant walking with a group of people in close proximity to

3

the McDonald's.  Because defendant was carrying a gun and matched the description of one of the suspects, officers approached and ordered defendant to drop the weapon.  Defendant threw the handgun behind a nearby motor home, but officers were able to recover a 32-caliber revolver after they placed defendant under arrest.  The weapon was unloaded and had the serial number scratched off.

Defendant was charged with various firearm-related offenses, including second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), which is subject to the mandatory minimum sentence under the Graves Act.  When defendant was charged in 2011, the mandatory minimum term was three years.[1]  At the time of his offense, defendant was an eighteen-year-old full-time college student with no juvenile or adult criminal history.  Thus, as a first-time offender, defendant was eligible for a waiver of the mandatory term of incarceration under section 6.2.

Initially, defense counsel tried to persuade the prosecutor to file a motion recommending that the assignment judge waive the three-year mandatory minimum sentence, but the prosecutor did "not believe that the interests of justice dictate[d] a

_____

[1] An amendment to the Graves Act was adopted in August 2013, increasing the mandatory minimum sentence from three years to forty-two months.  L. 2013, c. 113, § 2 (codified at N.J.S.A. 2C:43-6).

4

waiver" in defendant's case.  Defendant then filed a motion asking the trial court to refer his case to the assignment judge with the hope that the prosecutor would consent to a waiver. Attached to his motion were numerous documents attesting to defendant's moral character and academic success.

The prosecutor opposed defendant's motion as procedurally improper because under section 6.2 a sentencing court, not the trial court, is authorized to refer the case to the assignment judge.  The prosecutor also argued that the matter could be referred to the assignment judge only with the prosecutor's approval.  Up until that point, the prosecutor had not provided a written statement of reasons for his refusal to seek a waiver; the prosecutor only stated, "[a]s has been indicated in the past, the State does not believe that the interests of justice dictate a waiver . . . in this case."

Around this time, defendant filed a request under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, for various documents, including police reports, indictments, and plea forms for all Graves Act cases between 2010 and 2012 in which waivers were granted.  According to defendant, the only way to prove that the prosecutor abused his discretion in denying a waiver was to compare the facts of defendant's case to the facts of other similar cases in which waivers were granted.  The Middlesex County Prosecutor's Office denied his request, stating

5

that there was "no single document offering a list of defendants who fall into this category and, under OPRA, we are not permitted to conduct research for requestors, or create documents that do not already exist."

After his failed attempts to obtain the prosecutor's consent to a waiver, defendant pled guilty to second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); the State agreed to recommend that defendant be sentenced as a third-degree offender. At sentencing, defense counsel informed the court that the OPRA request to obtain information about other Graves Act waiver cases was unsuccessful. The court instructed the prosecutor to state on the record the reasons for refusing to move for a waiver. The prosecutor responded that his decision was "anything but arbitrary and capricious" because defendant's actions went beyond mere possession of a firearm, and that brandishing a weapon during an altercation is exactly the type of conduct the Graves Act seeks to deter.

The court acknowledged that this case differs from the "[w]aiver cases that the [c]ourt normally gets," where a person from out-of-state is caught in New Jersey carrying a firearm that he or she legally owns. The sentencing judge recognized that brandishing a gun was merely a "very silly, stupid mistake" on defendant's part, but concluded that the prosecutor's decision was not "arbitrary and capricious, or even quite

6

frankly, respectfully, in error" because the firearm had been brandished.

The court identified the "clearly significant mitigating factors here," such as defendant's family status, young age, and lack of a prior criminal record. "[R]egardless of the fact that the mitigating factors substantially outweigh . . . any aggravating factors," the court sentenced defendant in accordance with the plea agreement to three years' imprisonment with a mandatory three-year parole disqualifier pursuant to the Graves Act.

The Appellate Division vacated defendant's guilty plea in the interest of "fundamental fairness." State v. Benjamin, 442 N.J. Super. 258, 260 (App. Div. 2015). The panel remanded the case for proceedings consistent with State v. Alvarez, 246 N.J. Super. 137, 146-49 (App. Div. 1991), which allows defendants to appeal the denial of a waiver to the assignment judge upon a showing of patent and gross abuse of discretion by the prosecutor. Benjamin, supra, 442 N.J. Super. at 264-67.

Additionally, the appellate panel interpreted the Attorney General's Directive to Ensure Uniform Enforcement of the "Graves Act" (Oct. 23, 2008, as corrected Nov. 25, 2008) (Directive) as requiring prosecutors to memorialize their reasons for denying a Graves Act waiver "as a means to ensure

7

that waiver decisions are not disparate." Benjamin, supra, 442 N.J. Super. at 266. Thus, the panel observed that,

> without knowing what aggravating or mitigating factors the prosecutor considered (required by the Directive), without a written explanation for the denial (other than the opposition to the motion), and without provision of other waiver case files (required by the Directive), defendant was severely disadvantaged in meeting his Alvarez burden. Moreover, given these circumstances, no informed judicial determination of the motion could be made.
>
> [Ibid.]

Accordingly, the panel instructed the prosecutor on remand to give defendant a written statement of reasons for the denial and allowed defendant to renew his request for discovery of files related to Graves Act waiver decisions by the prosecutor. Id. at 267.

After the Appellate Division's ruling, the Attorney General superseded the Middlesex County Prosecutor and petitioned this Court for review. We granted certification limited to the issue of "whether a defendant seeking a waiver of a mandatory sentence under the Graves Act has the right to discovery of the prosecutor's files on previous applications for Graves Act waivers." 224 N.J. 119 (2016). Soon thereafter, the Office of the Public Defender assumed representation of defendant. We granted amicus curiae status to the American Civil Liberties Union of New Jersey (ACLU).

8

In the State's view, uniform application of the Graves Act does not require identical application to all defendants. The State warns that allowing discovery of other waiver cases would inappropriately shift the focus of judicial review from individual assessments of defendants to comparisons with other defendants in prior waiver cases.

The State concedes that the prosecutor should provide defendants with a written statement of reasons at the time a Graves Act waiver is denied. The State argues, however, that defendants are not entitled to "forage" through unrelated files to substantiate an allegation of disparate treatment by the prosecutor. The State asserts that permitting discovery of such files would require prosecutors to turn over confidential work product and sensitive information pertaining to trial that would violate the privacy rights of other defendants. Relatedly, the State notes that criminal discovery materials, such as pre-trial intervention (PTI)[2] records, are excluded from public access.

The State maintains that numerous safeguards exist to ensure fair application of section 6.2, such as the Directive,

---

[2] PTI is a diversionary program that provides qualifying criminal defendants with rehabilitative services while sparing them both the stigma of prosecution and the consequences of conviction. N.J.S.A. 2C:43-12.

which contains standards and procedures to guide waiver decisions and, according to the State, sufficiently cabins prosecutorial discretion. Finally, the State stresses that because all waiver applications, including the one in this case, pass through the assignment judge, that judge is in the "best position" to identify discriminatory practices.

B.

Defendant claims that a written statement of reasons explaining the prosecutor's denial of a Graves Act waiver is insufficient on its own to allow defendant to meet his Alvarez burden. Defendant asserts that the only way to determine whether the relevant sentencing factors were appropriately considered by the prosecutor, without discrimination, would be to compare all cases in which a waiver was granted. Defendant further cautions that to require the assignment judge or his or her designee[3] to rely solely on experience to identify discriminatory conduct, rather than on cases for comparison, would deprive the Appellate Division of a sufficient record.

Because sentencing is a judicial function, defendant argues that judicial oversight of Graves Act waiver decisions is

---

[3] Assignment judges may delegate the responsibility of hearing Graves Act waiver motions to the Criminal Presiding Judge. Administrative Office of the Courts, Memorandum, Motions in Graves Act Cases – Delegable by Assignment Judge to Criminal Presiding Judge (Nov. 21, 2008); see also R. 1:33-6(a).

10

required.  Defendant highlights this Court's precedent requiring meaningful judicial review of prosecutorial decisions that result in mandatory sentences.  Defendant therefore asks the Court to require:  (1) prosecutors to supply defendants with the case-specific memorializations described in the Directive as an explanation of their Graves Act waiver decisions; (2) prosecutors to provide access to the memorializations of their waiver decisions in the cumulative files that are required by the Directive; and (3) the Attorney General to make relevant statewide records available, in order to prevent inter-county disparities.

C.

Amicus ACLU concedes that in some instances, a statement of reasons alone is sufficient to demonstrate a prosecutor's arbitrary conduct.  Nonetheless, the ACLU maintains that discovery is often necessary to demonstrate arbitrary or discriminatory Graves Act waiver decisions.  The ACLU suggests that, in addition to the statement of reasons in a defendant's own case, a defendant should receive police reports and the prosecutor's statements of reasons from cases in which the prosecutor approved Graves Act waivers.  Such information, the ACLU asserts, will enable defendants and judges to determine how prosecutors identify and balance the aggravating and mitigating factors with different defendants.  Echoing defendant, the ACLU

stresses that the Directive requires prosecutors to maintain a cumulative file of Graves Act waiver cases, which defendants should be able to access, because the responsibility to "ferret out" arbitrary or discriminatory action should not belong to the assignment judge or designee.

III.

A.

"The [Graves] Act makes the use or possession of a firearm during the commission, attempted commission, or flight from the commission of certain designated offenses a sentencing factor that triggers the imposition of a mandatory term of imprisonment."  State v. Franklin, 184 N.J. 516, 529 (2005). For example, at the time defendant was charged, the Graves Act required that those convicted of possession of a weapon for an unlawful purpose serve a minimum custodial sentence "at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater."  N.J.S.A. 2C:43-6(c) (2008).

Underlying this statute is a legislative intent to deter individuals from committing firearm-related crimes by calling for a mandatory minimum term of imprisonment for those convicted of Graves Act offenses.  State v. Des Marets, 92 N.J. 62, 71 (1983).  Thus, even if the trial court finds that the mitigating factors of N.J.S.A. 2C:44-1(b) outweigh the aggravating factors

12

listed in subsection (a) of that statute, the court must still impose the minimum term of incarceration. State v. Towey, 114 N.J. 69, 82 (1989).

To mitigate the undue severity that might accompany the otherwise automatic application of the mandatory minimum sentence under the Graves Act, the Legislature included section 6.2, a limited exception that allows certain first-time offenders to receive a reduced penalty if the imposition of a mandatory term would not serve the interests of justice. Section 6.2 provides:

> On a motion by the prosecutor made to the assignment judge that the imposition of a mandatory minimum term of imprisonment under [the Graves Act] for a defendant who has not previously been convicted of [a Graves Act] offense . . . does not serve the interests of justice, the assignment judge shall place the defendant on probation pursuant to [N.J.S.A. 2C:43-2(b)(2)] or reduce to one year the mandatory minimum term of imprisonment during which the defendant will be ineligible for parole. The sentencing court may also refer a case of a defendant who has not previously been convicted of an offense under that subsection to the assignment judge, with the approval of the prosecutor, if the sentencing court believes that the interests of justice would not be served by the imposition of a mandatory minimum term.
>
> [N.J.S.A. 2C:43-6.2.]

In other words, an eligible defendant may be sentenced to either probation or a one-year custodial term during which he or she is disqualified from being paroled. Ibid. The relief that section

13

6.2 affords can arise in two ways: either the prosecutor makes a motion to the assignment judge for a waiver of the mandatory minimum penalty, or the sentencing judge refers the matter to the assignment judge if the prosecutor approves the referral. Ibid. In either scenario, the prosecutor must approve the waiver before the assignment judge or his or her designee imposes one of the two reduced penalties. Ibid.

B.

In 2008, the New Jersey Attorney General issued a directive "to ensure statewide uniformity in the exercise of prosecutorial discretion in implementing" the Graves Act. Directive, supra, at 10. The Directive instructs a prosecutor contemplating a waiver to "consider all relevant circumstances concerning the offense conduct and the offender," such as applicable aggravating and mitigating factors under N.J.S.A. 2C:44-1 and the likelihood of the defendant's conviction at trial. Id. at 12. Once a prosecutor moves for or consents to a waiver, the Directive requires the prosecutor to specify which reduced penalty would best serve the "interests of justice": either a mandatory minimum one-year period of incarceration or a probationary term. Id. at 14.[4] If a prosecutor seeks probation,

---

[4] The prosecutor's recommendation is not binding upon the court: "[a]lthough the prosecutor . . . may argue in favor of a probationary term or a custodial sentence with a one-year period of ineligibility, nothing in the statute suggests that the

14

he or she must explain why imposition of a one-year custodial term would constitute a serious injustice.  Id. at 13-14.

The Directive also contains specific record-keeping requirements.

> The prosecuting agency shall document in the case files its analysis of all of the relevant aggravating and mitigating circumstances, whether or not the agency moves for or approves a waiver or reduction pursuant to N.J.S.A. 2C:43-6.2.  Furthermore, where the prosecuting agency is seeking or approving a probationary sentence, the memorialization of reasons must explain why the imposition of a one-year term of imprisonment and parole ineligibility would constitute a serious injustice that overrides the need to deter others from unlawfully possessing firearms.  A copy of all case-specific memorializations required by this Section shall also be maintained in a separate cumulative file in order to facilitate such audits as the Attorney General may from time-to-time direct to ensure the proper and uniform implementation of this Directive.  The case file and cumulative audit file shall also document the information sources consulted to determine whether the defendant might be subject to the aggravating sentencing factor set forth in N.J.S.A. 2C:44-1a(5) (substantial likelihood that the defendant is involved in organized criminal activity).
>
> [Ibid.]

---

assignment judge or designee must accept the prosecutor's recommendation."  State v. Nance, ___ N.J. ___, ___ (2017) (slip op. at 17).  Indeed, "the authority to elect one of the two sentences set forth in section 6.2 is clearly vested in the assignment judge, or, by administrative directive, the presiding judge acting as the assignment judge's designee."  Ibid.

15

Therefore, whether or not a prosecutor moves for a waiver, his or her analysis of all aggravating and mitigating factors is recorded.  Id. at 13.  The cumulative file facilitates periodic audits by the Attorney General to "ensure the proper and uniform implementation of this Directive."  Id. at 14.  Finally, on a quarterly basis, prosecutors must report to the Attorney General the number of pre- and post-indictment pleas in which the prosecutor moved for, or consented to, a Graves Act waiver. Ibid.

IV.

Before addressing the issue raised in this appeal, we must first determine whether sufficient procedural safeguards are in place to protect a defendant's right to challenge the denial of a Graves Act waiver.

A.

Our analysis is aided by examining challenges to the statutory delegation of sentencing discretion to prosecutors in the Comprehensive Drug Reform Act (CDRA), N.J.S.A. 2C:35-1 to 36A-1.  The CDRA was enacted to aggressively battle drug abuse and drug-related crime.  N.J.S.A. 2C:35-1.1(c).  Like the Graves Act, the CDRA was designed to "provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders," ibid., and therefore mandates parole ineligibility periods for certain drug-related crimes.

16

In 1992, this Court decided State v. Lagares, which involved the constitutionality of the prosecutor's power under N.J.S.A. 2C:43-6(f) to seek a mandatory extended term[5] for repeat offenders of the CDRA, even though "extended terms are ordinarily discretionary with the court."  127 N.J. 20, 23 (1992).  In the same year, this Court also decided State v. Vasquez, where the defendant challenged N.J.S.A. 2C:35-12, which vests the prosecutor with discretion to waive the CDRA's mandatory minimum term of incarceration through a negotiated plea or post-conviction agreement.  129 N.J. 189, 196 (1992). In both cases, we upheld the statutory delegation of sentencing discretion to prosecutors, provided that (1) the Attorney General promulgated guidelines to help prosecutors uniformly apply the statute; (2) prosecutors stated on the record the reasons supporting their decision in order to enable judicial review and ensure compliance with the guidelines; and (3) a court could review and overturn the prosecutor's decision if a defendant demonstrates that the prosecutor acted arbitrarily and

---

[5] New Jersey's Criminal Code "provides for ordinary sentences [] as well as extended-term sentences that carry greater punishment for the same crime."  State v. Robinson, 217 N.J. 594, 606-07 (2014) (citing State v. Pierce, 188 N.J. 155, 161 (2006)).  For example, a second-time Graves Act offender may face an extended term between five and ten years, if convicted of a third-degree offense; ten and twenty years, if convicted of a second-degree offense; or thirty years and life imprisonment, if convicted of a first-degree offense.  N.J.S.A. 2C:43-7.

17

capriciously. Lagares, supra, 127 N.J. at 28-33; Vasquez, supra, 129 N.J. at 195-96; see also State v. Brimage, 153 N.J. 1, 24 (1997) (rejecting Attorney General's guidelines for formalizing disparity throughout state).

B.

We now consider whether the Graves Act provides the procedural safeguards required by this Court in Lagares and Vasquez.

First, written guidelines exist to channel prosecutorial discretion. See Vasquez, supra, 129 N.J. at 196. The Directive instructs prosecutors how to uniformly apply the Graves Act and section 6.2. Directive, supra, at 3. Not only does the Directive set forth general rules for prosecutors when considering charges, dismissals, and extended terms, id. at 5-7, but it also provides clear parameters for prosecutors contemplating a waiver, id. at 10-15. The Directive ensures even application throughout the state by requiring all prosecutors to consider the same factors and adhere to the same plea procedures. While the possibility exists that, in similar circumstances, prosecutors in different counties may reach different Graves Act waiver conclusions, we have recognized that some disparity in sentencing is inevitable. Brimage, supra, 153 N.J. at 22.

18

Second, the <u>Directive</u> requires prosecutors to "document in the case file [their] analysis of all the relevant aggravating and mitigating circumstances," even if a Graves Act waiver is not being sought. <u>Directive</u>, <u>supra</u>, at 13. The Appellate Division concluded in this case that under this provision of the <u>Directive</u>, the prosecutor was obligated to provide defendant with "written reasons for withholding [his] consent to a waiver" at the time the prosecutor made that decision. <u>Benjamin</u>, <u>supra</u>, 442 <u>N.J. Super.</u> at 265. The State concedes that this is appropriate to facilitate judicial review for the arbitrary or discriminatory exercise of prosecutorial discretion.

Third, since the Appellate Division's 1991 decision in <u>Alvarez</u>, upholding section 6.2, defendants have been able to seek judicial review of prosecutors' waiver decisions. In order to do so, a defendant must, by motion to the assignment judge, demonstrate "arbitrariness constituting an unconstitutional discrimination or denial of equal protection" in the prosecutor's decision. <u>Alvarez</u>, <u>supra</u>, 246 <u>N.J. Super.</u> at 148; <u>Watson</u>, <u>supra</u>, 346 <u>N.J. Super.</u> at 535 (explaining defendant must show "prosecutor's refusal [was] a patent and gross abuse of discretion"). Once a defendant makes this threshold showing, the defendant can obtain a hearing to review the prosecutor's decision if the assignment judge concludes that the "interests of justice" so require. <u>Alvarez</u>, <u>supra</u>, 246 <u>N.J. Super.</u> at 148-

19

49. This judicial backstop ensures that prosecutorial discretion is not unchecked because the assignment judge retains "ultimate authority" to review the prosecutor's waiver decisions for arbitrariness and discrimination. Id. at 146-47.

Therefore, prosecutors are guided by standards, inform defendants of the basis for their decisions, and are subject to judicial oversight. Accordingly, we conclude that the Graves Act affords meaningful judicial review of a prosecutor's decision to deny a Graves Act waiver.

V.

We now turn to the question posed in this appeal: whether defendants are entitled to discovery of the Directive-mandated "case-specific memorializations" and cumulative files of prosecutorial decisions to recommend waivers for cases other than their own.

Defendant and the ACLU submit that the only way for defendant to know if the prosecutor fairly ascribed and weighed the applicable aggravating and mitigating factors is to compare defendant's case to those of similarly situated defendants. Defendant claims that this information is contained in the "case-specific memorializations" and "cumulative files." See Directive, supra, at 13-14.

All case-specific files should contain a statement of reasons which, upon a defendant's Alvarez motion, the assignment

20

judge may consider in assessing the prosecutor's conduct, as the statement will show the prosecutor's reasons not to grant a waiver for a particular defendant. Conversely, additional case-specific information is contained in case and cumulative files for administrative reasons because those files function as internal documents, the primary purpose of which is to allow prosecutors to assess the case and the Attorney General to conduct audits to ensure compliance with the Directive. Id. at 14. Due to the administrative nature of the case and cumulative files, we do not find that any case-specific information beyond a statement of reasons was intended to be accessed by a Graves Act defendant seeking to demonstrate that the prosecutor acted arbitrarily.

Moreover, this Court has never mandated discovery to aid defendants in demonstrating arbitrary and capricious conduct or disparate treatment without a preliminary showing. As stated in Alvarez, supra, a defendant may obtain a hearing to review the prosecutor's decision only after he or she has demonstrated in a motion that the prosecutor abused his or her discretion. 246 N.J. Super. at 148-49. In State v. Sutton, when a defendant challenged the prosecutor's denial of PTI, this Court held that the defendant could not prevail merely because she could show that the prosecutor approved PTI for others "charged with similar offenses." 80 N.J. 110, 120 (1979). Rather, the

21

defendant needed to prove that she received "less favorable treatment than identically situated individuals." Ibid. The Court remanded the case to give the defendant the opportunity to show that the prosecutor relied on "irrelevant or inappropriate factors," thereby abusing his discretion in rejecting the defendant's PTI application. Id. at 119, 121. Importantly, the Court clarified that its "holding . . . should not be read as granting PTI applicants a license to subpoena prosecutorial files." Id. at 120. Nor would this Court allow defendants to "interrogate prosecutors under oath" to substantiate allegations of "less favorable treatment than other similarly situated individuals." Ibid. To the contrary, we repeatedly stated that defendants must support their claims by "independently secured evidence." Ibid.

While Rule 3:13-3 provides that "a defendant has a right to automatic and broad discovery of the evidence the State has gathered in support of its charges," State v. Scoles, 214 N.J. 236, 252 (2013), it does not require the prosecutor to furnish a defendant with files from cases other than his or her own. See R. 3:13-3; cf. State v. Hernandez, 225 N.J. 451 (2016). We therefore conclude that defendants are not entitled to discovery of a prosecutor's case-specific memorializations and cumulative files when challenging the denial of a Graves Act waiver in an Alvarez motion because there are sufficient procedural

22

safeguards in place for meaningful judicial review of a prosecutor's waiver decision.

## VI.

For the reasons set forth above, the judgment of the Appellate Division is affirmed as modified.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion. JUSTICE ALBIN filed a separate, dissenting opinion.

23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

        v.

KASSEY BENJAMIN,

    Defendant-Respondent.

    JUSTICE ALBIN dissenting.

    Defendants convicted of Graves Act offenses are subject to mandatory-minimum periods of incarceration.  N.J.S.A. 2C:43-6(c).  Under the Graves Act, the prosecutor is vested with the statutory authority to file a motion with the Assignment Judge to waive the imposition of the mandatory-minimum sentence.  N.J.S.A. 2C:43-6.2.  Prosecutors may not exercise their waiver authority in a way that results in similarly situated defendants receiving disparate sentences.  See State v. Alvarez, 246 N.J. Super. 137, 148-49 (App. Div. 1991).  The adversarial process has a role to play in checking the abuse of prosecutorial discretion and ensuring that waiver decisions do not undermine the goal of uniformity in sentencing, which is the primary objective of the Code of Criminal Justice.  That role, however, cannot be fulfilled if the defense is denied relevant discovery.

    The majority affords defendants the right to a statement of

reasons when the prosecutor denies a Graves Act waiver.  Yet, the majority denies defendants the very information necessary to establish discriminatory or unequal treatment -- access to the reasons given for the grant or denial of Graves Act waivers in other cases.  Granting that minimal discovery right would not cause undue administrative inconvenience, but it would place a check on the potential abuse of the waiver process and promote greater consistency in sentencing.

Because the majority's denial of this limited discovery right disserves the goals of uniformity in sentencing, I respectfully dissent.

I.

The majority acknowledges that a prosecutor who denies a defendant a waiver from the mandatory sentencing provisions of the Graves Act must provide a statement of reasons explaining that decision.  In addition, the case-specific reasons for the prosecutor's decision are kept in a centralized file pursuant to an Attorney General Directive.  Directive to Ensure Uniform Enforcement of the "Graves Act" 13-14 (Oct. 23, 2008, as corrected Nov. 25, 2008).  Each county prosecutor is required to maintain a "separate cumulative file" so that the Attorney General can "ensure the proper and uniform implementation of this Directive." Id. at 14.  This procedure advances the goal of "statewide uniformity in the exercise of prosecutorial

2

discretion in implementing" the Graves Act. Id. at 10.

A defendant can mount a successful challenge to the denial of a waiver from a mandatory Graves Act sentence only if it can be shown that the prosecutor's decision was arbitrary -- that is, the decision amounts to "an unconstitutional discrimination or denial of equal protection constituting a 'manifest injustice.'" Alvarez, supra, 246 N.J. Super. at 148. The prosecutor's separate cumulative file, detailing the case-specific reasons for waiver denials, contains the information that will reveal whether a defendant's treatment and sentence is so disparate from that of other similarly situated defendants that it constitutes "unconstitutional discrimination or denial of equal protection." See ibid. Although the Attorney General can audit the separate cumulative file, the defendant -- who will suffer the consequences of discriminatory treatment -- cannot.

I see no reason why a defendant should not have access to the separate cumulative file (with the redaction of any confidential information) or, at the very least, to the statements of reasons given to the Assignment Judge for granting or denying waivers. The statements of reasons provided to the Assignment Judge are public documents. In our adversarial system, the defendant is not required to trust the prosecutor to protect the defendant's interests and may insist on

3

verification.  Defendants are not expected to rely on the kindness of the prosecutor.  Defendants have a right to challenge in a meaningful way a claimed abuse of a waiver decision.

Permitting the discovery of the prosecutor's statements of reasons for denying Graves Act waivers is consonant with the Code of Criminal Justice.  "The dominant, if not paramount, goal of the Code is uniformity in sentencing."  State v. Natale, 184 N.J. 458, 485 (2005) (quoting State v. Kromphold, 162 N.J. 345, 352 (2000)).  The Code recognizes "that similarly situated defendants [should] not receive dissimilar sentences."  Ibid. Given the broad sentencing discretion granted to prosecutors in Graves Act cases -- the discretion to waive the imposition of the mandatory-minimum term of imprisonment pursuant to N.J.S.A. 2C:43-6.2 -- the presence of checks becomes all the more important.

Access to statements of reasons given in other Graves Act waiver cases may assure defendants that they have been treated fairly.  And, in those instances where they believe they have not, they will have relevant information to press their cases of unequal or discriminatory treatment.

Further, there is no good reason to deny defendants access to statements of reasons filed with the Assignment Judge in other waiver cases, whether those statements are in the

4

prosecutor's cumulative file or in the judiciary's hands. Nothing prevents the judiciary from maintaining those statements in a central file so that historical information will be available to prosecutors, defendants, and assignment judges. I agree with the majority that defendants should not have free rein to forage through files of other cases for irrelevant information, even in light of the broad discovery available in criminal cases. See State v. Hernandez, 225 N.J. 451, 463 (2016) ("However expansive our discovery rule and jurisprudence may be, they do not sanction rummaging through irrelevant evidence."). But defendant's discovery request was directly related to his claim of disparate treatment, and relevance is the key to a defendant's right to discovery. See State v. Scoles, 214 N.J. 236, 251 (2013); R. 3:13-3(c). A limited right of discovery to the statements of reasons already memorialized on the issue of waiver is directly relevant and would ensure that justice is dispensed fairly and uniformly.

## II.

The right to challenge unconstitutional discrimination or denial of equal protection in Graves Act waiver cases is a hollow right if defendants are denied basic information necessary to assert that right. I therefore respectfully dissent.

5