**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5323-18T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

WILBUR MOUNT,

    Defendant-Respondent.

_____

> Submitted December 16, 2019 – Decided December 23, 2019
>
> Before Judges Sabatino and Sumners.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 14-02-0225.
>
> Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for appellant (Joie D. Piderit, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).
>
> Respondent has not filed a brief.

PER CURIAM

In this firearms possession case, the State appeals the trial court's June 28, 2019 order granting defendant Wilbur Mount a waiver of the usual minimum sentencing consequences under the Graves Act, N.J.S.A. 2C:43-6.  We affirm.

The Graves Act calls for a sentence of imprisonment with a mandatory period of parole ineligibility for various firearm-related crimes.  N.J.S.A. 2C:43-6(c).  The Act provides, in relevant part, that a defendant convicted of certain enumerated firearms offenses must serve a minimum prison term of "one-half of the sentence imposed by the court or 42 months, whichever is greater, . . . during which the defendant shall be ineligible for parole."  Ibid.  The statute is designed "to deter individuals from committing firearm-related crimes."  State v. Benjamin, 228 N.J. 358, 368 (2017); see also State v. Des Marets, 92 N.J. 62, 71 (1983).

Pertinent to the present case, the Graves Act contains an "escape valve" provision allowing for relief in certain limited instances from the statute's mandatory minimum sentence.  State v. Alvarez, 246 N.J. Super. 137, 139 (App. Div. 1991).  The escape valve is intended to avoid circumstances where the harsh sentencing consequences of the statute would not serve the interests of justice.  The provision reads:

> On a motion by the prosecutor made to the assignment judge that the imposition of a mandatory

minimum term of imprisonment under [the Graves Act] for a defendant who has not previously been convicted of an offense under [the Graves Act], . . . does not serve the interests of justice, the assignment judge shall place the defendant on probation pursuant to paragraph (2) of subsection b. of N.J.S.A. 2C:43-2 or reduce to one year the mandatory minimum term of imprisonment during which the defendant will be ineligible for parole. The sentencing court may also refer a case of a defendant who has not previously been convicted of an offense under that subsection to the assignment judge, with the approval of the prosecutor, if the sentencing court believes that the interests of justice would not be served by the imposition of a mandatory minimum.

[N.J.S.A. 2C:43-6.2 (emphasis added).]

A prosecutor's discretion to recommend a Graves Act waiver to the court is guided by an Attorney General Directive. Attorney General Directive to Ensure Uniform Enforcement of the "Graves Act" (Oct. 23, 2008, as corrected Nov. 25, 2008).[1] The Directive requires prosecutors to "consider all relevant circumstances concerning the offense conduct and the offender, including those aggravating and mitigating circumstances set forth in N.J.S.A. 2C:44-1 [and] the prosecutor may also take into account the likelihood of obtaining a conviction at trial." Ibid. In deciding whether to move to authorize a lesser sentence, the prosecutor must follow the Attorney General's Directive and, if a

---

[1] The Directive is available at https://www.state.nj.us/lps/dcj/agguide/pdfs/Graves-Act-Oct23-2008.pdf.

defendant's request for such a motion is denied, provide a particularized statement of reasons for the denial. Benjamin, 228 N.J. at 361.

Case law has established that defendants may seek judicial review of a prosecutor's denial of a Graves Act waiver. Id. at 372; Alvarez, 246 N.J. Super. at 137. In order to do so, a defendant may move before the assignment judge for a hearing as to whether the prosecutor's rejection or refusal is "grossly arbitrary or capricious or a patent abuse of discretion." Alvarez, 246 N.J. Super. at 147; see also State v. Cengiz, 241 N.J. Super. 482, 497-98 (App. Div. 1990). When evaluating the interests of justice standard, the court "must consider the nature of and the relevant circumstances pertaining to the offense," including "facts personal to the defendant," such as "the defendant's role in the incident to determine the need to deter him from further crimes and the corresponding need to protect the public from him." State v. Megargel, 143 N.J. 484, 500-01 (1996).

The facts in the present case arise out of a context in which defendant obtained a gun and bullets after he and his family had been threatened with violence by a known gang member. The gang member had an ongoing disagreement with defendant. The gang member had apparently "pistol whipped" defendant in the past, causing him to be hospitalized.

4

The record reflects that on August 9, 2013, the gang member who had beaten defendant arrived unexpectedly at defendant's house, accompanied by two other men. Defendant's wife spoke with the men outside of the home. The gang member told the wife he wanted to "fight the fair one" with defendant. The wife saw two AK-47 assault rifles displayed in the men's car. She questioned the men about the weapons, and they reportedly responded, "[w]e always have to carry those." The wife called the Perth Amboy police to report what had occurred, and the men fled the scene. Neither she nor defendant lodged a formal complaint with the police against the men. Defendant did go to police headquarters, but he did not provide them with any further information.

According to representations by defense counsel, at the time of the incident, the gang leader was "on the street" pending an attempted murder charge of another person.

About ten days later, the police received a report from a confidential informant that defendant was carrying a nine-millimeter handgun in a fanny pack. The police ran a warrant check on defendant, which revealed a pending warrant from a different municipality involving a $350 unpaid sum.

Thereafter, while on patrol near defendant's residence, a Perth Amboy police officer saw defendant, his wife, their daughter, and defendant's father in

a car. Defendant's wife was driving, defendant was in the front passenger seat, and the other two family members were in the rear. According to a representation by defense counsel, the family had just picked up the daughter from a "Sweet Sixteen" party. An officer saw defendant speaking with an acquaintance who was standing by the car window. As the officers approached the car, the acquaintance walked away.

At this point, the officers observed defendant moving in a furtive way that gave them the impression he was attempting to conceal an item on the floor of the car. They saw a fanny pack on the floor of the passenger side, and ordered defendant out of the vehicle. The officers then arrested defendant on the outstanding municipal warrant. They searched the fanny pack and found a nine-millimeter handgun with a defaced serial number, as well as a magazine containing eight hollow-point bullets. Defendant shouted, "[Y]ou know why I'm carrying that, I have to protect my family."

In February 2014, a Middlesex County grand jury returned an indictment charging defendant with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d); and fourth-degree possession of prohibited devices,

N.J.S.A. 2C:39-3(f). The unlawful purpose charge was subsequently dismissed for reasons not disclosed in the record.

On September 18, 2018, defendant's counsel requested the prosecutor's office approve a Graves Act waiver. In making the request, defense counsel stressed that defendant's criminal record only involved bad check offenses that occurred in 2009, and that he had a clean record in the ensuing years.

The prosecutor's office rejected defendant's request for a waiver. It issued a letter detailing its reasons for doing so, tracking the various factors in the Attorney General's Directive. Among other things, the prosecutor's office asserted that defendant had "shunn[ed] police assistance" to protect him and his family from the gang-member threats, and instead had illegally obtained firearms to take matters "into his own hands."

Defendant sought judicial review of the prosecutor's denial. The application was delegated by the vicinage's Assignment Judge to the Presiding Judge of the Criminal Part, Judge Michael A. Toto.

After considering the parties' submissions and oral argument, Judge Toto ruled that the interests of justice in this particular case warranted a Graves Act waiver, and overruled the prosecutor's opposition.

A-5323-18T4

The judge issued a detailed sixteen-page written opinion explaining why, in this exceptional case, an override of the prosecutor's waiver denial was justified. Among other things, the judge's opinion noted: (1) the State did not adequately consider defendant's "compelling" reason to carry a handgun (i.e., duress); (2) defendant's limited criminal history; and (3) the reduced concerns in this case for deterrence. Further, the judge assessed defendant's likelihood of success at trial as "moderate." On the whole, the judge found the prosecutor's decision was arbitrary, given the discrete circumstances presented.

That same day, defendant conditionally pled guilty to count one, second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and count three, fourth-degree prohibited devices, N.J.S.A. 2C:39-3(f). Consistent with the Graves Act waiver, the court imposed a custodial sentence of three years with a one-year stipulated period of parole ineligibility. The trial court stayed defendant's sentence, pending the State's appeal to this court of the waiver ruling.

This appeal by the State followed. In its brief, the State contends the trial court underestimated the public safety considerations at stake in not imposing the usual minimum punishment for gun possessory crimes in this case. The State maintains the trial court's decision could foster vigilante behavior, and that

8

defendant should have relied on the police to protect him and his family rather than arming himself illegally.

Having considered the State's arguments in light of the record and the applicable scope of review, we affirm the trial court's decision to grant defendant's request for a Graves Act waiver. We do so substantially for the reasons eloquently set forth in Judge Toto's June 28, 2019 written decision.

As Judge Toto aptly recognized, this is a rare instance in which a judicial override of a prosecutor's Graves Act waiver denial is appropriate. The threat of further violence against defendant and his family was not conjectural. The gang member had already beaten defendant severely to a degree requiring hospitalization, an assault followed by the menacing display of weaponry to defendant's wife at the family residence. The family duly reported the threat to the police. Their reluctance to lodge a formal complaint, presumably for fear of sparking immediate retaliation, is not surprising. The circumstances strongly suggest defendant acquired the gun and ammunition, albeit illegally, solely for self-protection.

In affirming the trial court's decision in this particular exceptional case, we by no means intend to promote vigilante behavior. As it is, defendant will still serve at least a full year in prison as punishment for his conduct. We also

do not believe the presiding judge, who undoubtedly has a wealth of day-to-day experience with gun crimes, failed to accord sufficient respect to the county prosecutor's discretion. The judge reasonably found the interests of justice in this particular case called for a contrary result, and we doubt his decision, or our affirmance of it, will produce long-term untoward effects.

Affirmed. The stay of defendant's sentence shall expire in thirty days.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION