72 N.J. Super. 541 (1962)
178 A.2d 654
CHARLES BACON, PETITIONER-APPELLANT,
v.
ATLANTIC CITY TRANSPORTATION COMPANY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 1962.
Decided February 16, 1962.
*542 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Isaac C. Ginsburg argued the cause for appellant.
Mr. Herbert Horn argued the cause for respondent (Messrs. Lloyd, Horn, Megargee & Steedle, attorneys; Mr. Horn, of counsel).
The opinion of the court was delivered by LEWIS, J.A.D.
Since the argument on appeal in this workmen's compensation heart case, Dwyer v. Ford Motor Company, 36 N.J. 487 (1962) has been decided. Our study of the present record, and applying the principle enunciated in Dwyer that "compensability arises whenever the required exertion is too great for the man undertaking the work, whatever the degree of exertion or condition of his heart," impels this court to reverse the judgment of the Atlantic County Court which affirmed the Division of Workmen's Compensation.
The statement of the proffered facts, depositional and testimonial, detailed at length in the opinion of the judge of compensation, is not assailed; in resume:

I.

AS TO THE ALLEGED "CLOSE ACCIDENT."
Petitioner Charles Bacon, 49 years of age, was a bus driver for the respondent Atlantic City Transportation Company, operator of a public utility transportation line on Absecon Island and elsewhere. He had been an employee of that company for approximately 15 years, and for some time operated a passenger bus in the Atlantic City area.
*543 On the morning of June 16, 1958 (a Monday) he commenced duty at 6:30 A.M., completing five local runs by 1:45 P.M. He rested before starting, at 2:55 P.M., on the last trip of the day, characterized as the "school time trip," which was along Atlantic Avenue (the main artery of travel) from the depot at the Inlet to the Franklin Avenue station at "7800 Margate." Upon reaching Tennessee and Atlantic Avenues (17 blocks from the Inlet), the bus stopped in front of City Hall; he "loaded" the passengers into the bus and was just pulling away from the curb line when a car approaching from the rear made a sudden right-hand turn directly in front of him. He (Bacon) quickly applied his brakes and swerved the steering wheel "real hard to the right in order to avoid the car hitting me, or me hitting the car"; there was no collision but "it was a near accident"; he then had to pull the steering wheel to the left with a great effort to get back in the bus lane. Petitioner claimed that at this particular moment he "broke out in a terrific sweat," experiencing excruciating pain across his chest and back, with burning pains down both arms, and that he was nauseated "in his stomach"; he pulled to the side of Tennessee Avenue in order to get out of traffic, rested for a few seconds, and then proceeded to go on with his route.
At the Franklin Avenue station he became sick. He "felt terrible" and was "in great pain" but, notwithstanding, he continued to make the return trip  carrying out his usual duties, discharging and picking up passengers, maneuvering through traffic  and finished the run without mishap. At Michigan Avenue Lawrence Beritelli, a neighbor, boarded the bus as a passenger and observed that petitioner "looked sick to me."
Upon arrival at the bus terminal at the Inlet shortly after 4 P.M., he again experienced a stomach upset and rested for a while in the trainmen's room before walking home, about two blocks, unassisted. He made no official report of the alleged "near accident," although he gave *544 testimony concerning a conversation with two fellow employees (then bus drivers), Charles Helder and Russell Hutchinson, to whom he complained that he was very sick and to whom he explained that he had had a "near accident" on Tennessee Avenue near City Hall. They offered to drive him home, which offer he refused.
Petitioner's wife returned home from work about 5 P.M. and found him in bed. She testified that he appeared to be in great pain; that she called Harry Coombs, a dispatcher for the respondent company, and reported to him that her husband got sick on the bus while at work and that she was about to call the doctor, which she did. The following day petitioner was taken to the Atlantic City Hospital. Bacon claims that while waiting for the ambulance, he telephoned Raymond Stark, superintendent of the transportation company, and informed him about the close accident of the preceding day. Stark admitted a conversation, but averred Bacon said he was going "to the hospital on account of his heart condition" and that he made no mention of a "close accident." No reference to a traffic incident is to be found in the hospital records. The history report dated June 17, 1958 indicates that the onset of Bacon's condition occurred three days prior to his admission to the hospital.
Neither the Division nor the County Court was convinced that petitioner had established the happening of a "close" or a "near" accident. The only evidence of the alleged traffic episode came from the lips of petitioner. He could not describe nor identify the car involved other than it was black; several passengers were aboard his vehicle, but none of them was produced as a witness; the incident occurred in front of City Hall and he continued the journey of an additional 140 blocks without making any effort to obtain assistance  we note a phone booth was available at the Franklin Avenue station.
The conduct of petitioner was at odds with an expected normal behavior pattern of a victim suffering from *545 a sudden heart attack. "One's actions are more significant than one's words uttered after the event in support of one's cause." Steinbrugge v. Steinbrugge, 2 N.J. 77, 82 (1949). The self-serving declarations of Bacon did not fall within the res gestae exception to the hearsay rule. Murphy v. George Brown & Co., 91 N.J.L. 412, 416 (Sup. Ct. 1918), cited approvingly in State v. Stephan, 118 N.J.L. 592, 602 (E. & A. 1937); Hagopian v. Fuchs, 66 N.J. Super. 374, 383 (App. Div. 1961). Said the judge of compensation: "* * * the Petitioner's story does not stand up under the glare of other testimony of all the circumstances and I feel that he has failed to prove by the greater weight of credible testimony that he has suffered an injury which arose out of his employment with the Respondent." The County Court found only "ordinary physical effort of petitioner's day by day job and doubt as to when the attack did occur."

II.

THE MEDICAL EVIDENCE.
As early as September 1955 petitioner began to experience pains across his chest, which were diagnosed as angina pectoris by Dr. Samuel A. Shuster, who had been the family physician for approximately 15 years. Electrocardiographic tests were negative. Nitroglycerin was prescribed for the patient and he was advised "to lose weight, smoke less, change his job and to return in six months for a checkup." Periodically since that time, petitioner revisited Dr. Shuster with similar symptomatic complaints and was treated for a heart condition. In 1957 the doctor again suggested that he "change the type of work he was doing." On May 16, 1958 Bacon reported to the doctor "that he had been getting pains in the chest more severely and more frequently and they were of longer duration and they were still occurring only while at work." The next time the doctor saw him was on June 16, 1958, the night of the alleged "near accident." *546 The physician's impression was that his patient had an attack of "angina, but it might have been some severe myorcardial [sic] insufficiency." He was given demerol. The following morning petitioner was hospitalized (for over three weeks) and his condition diagnosed as "acute posterior coronary thrombosis." On January 6, 1959 he was rehospitalized and put on medication. He was discharged on January 22 as totally disabled  "all we could hope to do was to try to keep him comfortable and alive as long as we could with the anticoagulants and the other medicine."
Dr. Irving C. Shavelson, a specialist in cardiovascular diseases, examined Bacon at the request of Dr. Shuster and testified that he considered the employment and the incident of June 16, 1958 to be "a competent producing cause" of his condition and disability. This opinion was based upon his examination, taking into consideration the patient's history and subjective complaints.
Respondent produced as an expert witness Dr. Levi Walker whose practice was limited to cardiology. His examination on November 18, 1959 revealed the patient to be totally disabled and that he had a well-healed myocardial infarction "which was no doubt the residual of the acute infarction that was noted on June 17 when he was admitted to the hospital first."
Petitioner's disability is unquestioned; likewise, the fact that he had a pre-existing heart condition since 1955. Work-associated causation is the central issue. Reliance was placed upon the cases recognizing the "presumption" that disability resulted from "natural physiological causes"; the principles declared in Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127 (1958), Loew v. Borough of Union Beach, 56 N.J. Super. 93 (App. Div. 1959), certif. denied 31 N.J. 75 (1959), and Jacobs v. Kaplan, 56 N.J. Super. 157 (App. Div. 1959); and this court's opinion in Dwyer v. Ford Motor Company, 66 N.J. Super. 469 (App. Div. 1961). These authorities were extensively considered and reappraised by Justice Francis in his majority opinion for *547 our Supreme Court in Dwyer v. Ford Motor Company, 36 N.J. 487 (1962), reversing Dwyer, supra (66 N.J. Super. 469). They need not be here reviewed. This is an intermediate appellate tribunal, bound by the final determinations of our Supreme Court. Kream v. Public Service Coordinated Transport, 42 N.J. Super. 307 (App. Div. 1956), affirmed 24 N.J. 432 (1957), cert. denied 355 U.S. 864, 78 S.Ct. 97, 2 L.Ed.2d 69 (1957).
Subsequent to oral argument of the case at bar, counsel for the parties have submitted correspondence stating their respective views concerning the application of the recent decision in Dwyer. We do not agree with respondent that "[t]here is no proof in this case within the holding of the Dwyer case, that the petitioner's heart condition was the result of anything dealing with his employment."
It was not necessary that petitioner establish a "near accident" to qualify for workmen's compensation coverage. The competent evidence in the record, reviewed as a whole, preponderates in support of the hypothesis that petitioner's bus driving activities precipitated, aggravated or accelerated an existing heart disease in an appreciable degree, i.e., "a degree greater than de minimis" within the meaning of Dwyer.
Accordingly, we hold that petitioner is entitled to an award and that the judgment of the County Court should be reversed.