**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1150-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CALEB T. THELISME,

     Defendant-Appellant.

_____

Submitted April 17, 2024 – Decided July 24, 2024

Before Judges Vernoia and Gummer.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-12-0871.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

By leave granted, defendant Caleb T. Thelisme appeals from an order denying his motion for a waiver, over the State's objection, of the mandatory minimum Graves Act[1] sentence and to compel the State to provide him with the State's cumulative file of Graves Act waiver decisions.  Because defendant failed to establish the State's denial of his request for a Graves Act waiver was a patent and gross abuse of discretion or that he was entitled to discovery of the State's cumulative file, we affirm.

I.

During the evening of May 2, 2022, officers from the Elizabeth Police Department responded to the area of Jefferson Park after receiving a report of shots fired.  The officers recovered twelve bullet casings from that area.  Later that night, a confidential informant told Detective Alex Gonzalez defendant, who was eighteen-years old, had been involved in the shooting in Jefferson Park that evening and was in possession of a semi-automatic handgun.  The informant also indicated the shooting was related to a gang dispute over drug turf.

The following afternoon, Gonzalez and other officers surveilled the Jefferson Park area and observed a group of men that included defendant.  The officers saw some of the men repeatedly cross the street, gather by an electrical

---

[1] N.J.S.A. 2C:43-6(c).

box, and cross back over the street. The officers observed defendant moving his head as if he were monitoring traffic, adjusting his waistband, and pressing himself against a parked car in what appeared to be an attempt to conceal himself. The other men and defendant regrouped and started walking. While they were walking, the officers observed defendant reach toward his waistband, an action the officers believed to be consistent with the behavior of an armed person.

Based on that determination, the officers decided to stop defendant to conduct a search for weapons. Another detective parked his unmarked police vehicle in front of the group of men, and Gonzalez exited from the passenger side of another vehicle. Defendant then reached into his waistband and removed a semi-automatic handgun that had a large-capacity magazine. Gonzalez ordered defendant to drop his weapon, but defendant ran from the officers, who followed him. As defendant ran into a driveway of one property, Gonzalez saw him throw the gun onto the adjacent property. Defendant was apprehended, placed under arrest, and, on May 3, 2022, charged under a complaint-warrant.

Gonzalez searched the property where he had seen defendant throw the weapon and found a black, semi-automatic handgun, which was determined to be a "ghost gun," loaded with one bullet in the chamber and an additional

A-1150-23

twenty-five rounds in a forty-round capacity magazine.[2]  The State later conceded the ballistics evidence located at the scene of the May 2, 2022 shooting near Jefferson Park was not consistent with the gun allegedly thrown by defendant the next day.

In an August 5, 2022 letter, defense counsel advised an assistant prosecutor defendant wanted to plead guilty, asserted a three-year imprisonment term with a one-year period of parole ineligibility would be appropriate, and requested a Graves Act waiver.  She contended that outcome "would be appropriate based on [defendant's] young age, potential for rehabilitation, family support, self-protection motivation, and evidentiary issues."  She also submitted a letter from defendant's mother.

On December 2, 2022, a grand jury issued an indictment, charging defendant with:  fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); third-degree possession of a firearm without a serial number, N.J.S.A. 2C:39-9(k); and fourth-degree possession of prohibited weapons and devices (a large capacity ammunition magazine), N.J.S.A. 2C:39-3(j).

---

[2]  United States v. Bishoff, 58 F.4th 18, 20, n.2 (1st Cir. 2023) (defining "ghost guns" as "firearms sold as sets of parts that can be assembled at home, and that typically lack markings such as serial numbers").

A-1150-23

In a December 16, 2022 email, an assistant prosecutor advised defense counsel the "Graves [Act] Waiver request to have [defendant] plead to 2nd degree Unlawful Possession of a Weapon with a recommended sentence of [three years in state prison] with a [one-year] parole ineligibility [period]" had been denied, "citing the fact the evidence shows [defendant] pulled the weapon when confronted with Elizabeth police, no proof issues, the fact that it involved a large capacity magazine and was a ghost gun, and that this was all captured via drone footage."

On March 17, 2023, defendant moved for a Graves Act waiver over the State's objection or, in the alternative, to compel the State to turn over its cumulative file of Graves Act waiver decisions. In support of his motion, defendant included a list of thirty cases in which the State had granted Graves Act waiver requests. In its letter brief in opposition to the motion, the State referenced a letter it had provided to defendant, "supplementing its decision to deny a Graves [Act] waiver pursuant to State v. Rodriguez, [466 N.J. Super. 71 (App. Div. 2021),] assessing the aggravating and mitigating circumstances pertaining to the case." That letter was not included in the appellate record. In reply, defendant included a list of an additional ninety-three cases in which the

State had granted Graves Act waiver requests. The State submitted a supplemental brief in response.

After hearing argument, the trial court entered an order and written opinion on November 1, 2023, denying the motion in its entirety. The court entered a "corrected version" of the written decision on January 16, 2024. Rejecting defendant's contention the court should apply an arbitrary-and-capricious standard when reviewing the State's denial of his Graves Act waiver request, the court considered whether the State had committed a patent and gross abuse of discretion in denying it, found that it had not, and denied defendant's motion. The court acknowledged the assistant prosecutor's December 16, 2022 email "was not a thorough statement of reasons" and did not "include a consideration of relevant aggravating and mitigating factors under N.J.S.A. 2C:44-1(a) and (b)," but the court was "satisfied that, in its [supplemental brief], the State outlined the reasons for the denial of a Graves [Act] waiver and included an analysis of applicable aggravating and mitigating factors."

The trial court thoroughly analyzed the potential aggravating and mitigating factors. The court found the State had not erred in finding aggravating factors three ("risk that the defendant will commit another offense"), six ("extent of the defendant's prior criminal record and the

6

seriousness of the offenses of which defendant has been convicted"), and nine ("need for deterring the defendant and others from violating the law") applied or in concluding those factors substantially outweighed mitigating factor fourteen (defendant was under the age of twenty-six years). N.J.S.A. 2C:44-1(a)(3), (a)(6), (a)(9), and (b)(14). The court highlighted "the circumstances of the alleged offenses," the strength of the evidence against defendant, his "actions in discarding a loaded gun while fleeing from the police," and his "significant" juvenile history, demonstrated by his multiple delinquency adjudications, including unlawful possession of a handgun, aggravated assault on a law-enforcement officer, criminal trespass, resisting arrest, and obstruction, and commission of offenses while he was on juvenile probation for other offenses.

The court rejected defendant's contention the State had erred in failing to find applicable mitigating factors three ("defendant acted under a strong provocation"), seven ("no history of prior delinquency or criminal activity"), eight ("conduct was the result of circumstances unlikely to recur"), nine (defendant's "character and attitude . . . indicate that [he] is unlikely to commit another offense"), and eleven (imprisonment would "entail excessive hardship to defendant or [his] dependents") were applicable, given his extensive juvenile history, the evidence did not support an excuse or justification for carrying a

7

loaded ghost gun equipped with "an illegal, extended magazine," his substance-abuse treatment did "not demonstrate that he [would] not commit another gun offense, or that his conduct in allegedly possessing a loaded firearm [wa]s unlikely to recur," and he had demonstrated a hardship but not an "excessive hardship" under mitigating factor eleven. N.J.S.A. 2C:44-1(b)(3), (b)(7) to (9), and (b)(11). The trial court determined that mitigating factor ten (defendant "likely to respond affirmatively to probationary treatment"), N.J.S.A. 2C:44-1(b)(10), was applicable to defendant. Even considering mitigating factor ten, the court "agree[d] with the State's determination that the aggravating factors substantially outweigh[ed] the mitigating factors."

The court held that in denying defendant's Graves Act waiver request, the State had not committed:

> a patent and gross abuse of discretion based on the circumstances of this case, especially defendant's alleged possession of a ghost gun loaded with a bullet in the chamber, [twenty-five] rounds of ammunition in a large-capacity magazine, and defendant's prior adjudication of delinquency for the unlawful possession of a handgun.

Given its consideration of many of the comparison cases cited by defendant and its meaningful review of the State's decision to deny his waiver request, the court

also denied defendant's request for access to the State's cumulative file of Graves Act waiver decisions.

We subsequently granted defendant's motion for leave to appeal. Defendant makes the following arguments on appeal:

> POINT I
>
> THE MATTER SHOULD BE REMANDED TO THE TRIAL COURT BECAUSE IT APPLIED THE WRONG LEGAL STANDARD IN REVIEWING DEFENDANT'S MOTION FOR A GRAVES ACT WAIVER OVER PROSECUTORIAL OBJECTION.
>
> POINT II
>
> EVEN IF THE TRIAL COURT WERE CORRECT IN APPLYING THE HIGHER STANDARD OF REVIEW, IT ERRED IN DENYING WAIVER BECAUSE DEFENDANT HAD MET THAT HIGHER STANDARD.
>
> POINT III
>
> IF THE MATTER IS NOT REMANDED TO THE TRIAL COURT WITH DIRECTIONS TO GRANT DEFENDANT'S GRAVES ACT WAIVER, DEFENDANT SHOULD BE GIVEN ACCESS TO THE STATE'S CUMULATIVE GRAVES FILE TO FURTHER DEMONSTRATE HIS DISPARATE TREATMENT.

Unpersuaded by those arguments, we affirm.

A-1150-23

The Graves Act requires sentences imposed for "certain firearm-related offenses" to include "a minimum term of incarceration." State v. Benjamin, 228 N.J. 358, 360 (2017). "The minimum term shall be fixed at one-half of the sentence imposed by the court or [forty-two] months, whichever is greater, . . . during which the defendant shall be ineligible for parole." N.J.S.A. 2C:43-6(c). Defendant was charged with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), one of the enumerated offenses encompassed by the Graves Act.

The Graves Act contains a "limited exception," N.J.S.A. 2C:43-6.2, "that allows certain first-time offenders to receive a reduced penalty if the imposition of a mandatory term would not serve the interests of justice." Benjamin, 228 N.J. at 368; see also State v. Alvarez, 246 N.J. Super. 137, 139 (App. Div. 1991) (describing N.J.S.A. 2C:43-6.2 as an "'escape valve' to the mandatory sentence requirements"). N.J.S.A. 2C:43-6.2 authorizes "the assignment judge, upon motion of the prosecutor or request of the sentencing judge with the prosecutor's approval, to waive the mandatory minimum sentence and impose either probation or a reduced mandatory custodial term." Benjamin, 228 N.J. at 360-61.

In a directive issued in 2008 "'to ensure statewide uniformity in the exercise of prosecutorial discretion in implementing'" the Graves Act, the New Jersey Attorney General "instruct[ed] a prosecutor contemplating a waiver to 'consider all relevant circumstances concerning the offense conduct and the offender,' such as applicable aggravating and mitigating factors under N.J.S.A. 2C:44-1 and the likelihood of the defendant's conviction at trial." Benjamin, 228 N.J. at 369 (quoting Off. of the Att'y Gen., Law Enf't Directive, Directive to Ensure Uniform Enforcement of the "Graves Act" (Directive) 10-12 (rev. Nov. 25, 2008)). Pursuant to the Directive, in cases in which the "prosecuting agency" considers whether to grant a Graves Act waiver, the prosecuting agency must "document in the case files its analysis of all of the relevant aggravating and mitigating circumstances" and in cases in which it grants a waiver, it "must explain why the imposition of a one-year term of imprisonment and parole ineligibility would constitute a serious injustice that overrides the need to deter others from unlawfully possessing firearms." Id. at 369-70 (quoting Directive, at 13-14). The Directive also requires the prosecuting agency to maintain "[a] copy of all case-specific memorializations . . . in a separate cumulative file in order to facilitate such audits as the Attorney General may from time-to-time

A-1150-23

direct to ensure the proper and uniform implementation of this Directive."  Id. at 370 (quoting Directive, at 14).

If the prosecutor decides not to approve the waiver, a defendant may move "before the assignment judge or designated judge . . . for a . . .  hearing as to whether the prosecutor's rejection or refusal is grossly arbitrary or capricious or a patent abuse of discretion."  Alvarez, 246 N.J. Super. at 147 (quoting State v. Cengiz, 241 N.J. Super. 482, 497-98 (App. Div. 1990)); see also Benjamin, 228 N.J. at 372 (acknowledging defendants' ability "to seek judicial review of prosecutors' waiver decisions").  A defendant must "demonstrate 'arbitrariness constituting an unconstitutional discrimination or denial of equal protection' in the prosecutor's decision."  Benjamin, 228 N.J. at 372 (first quoting Alvarez, 246 N.J. Super. at 148; and then citing and quoting State v. Watson, 346 N.J. Super. 521, 535 (App. Div. 2002), as explaining a defendant must show the "prosecutor's refusal [was] a patent and gross abuse of discretion").  If "a defendant makes this threshold showing, the defendant can obtain a hearing to review the prosecutor's decision if the assignment judge concludes that the 'interests of justice' so require."  Id. at 372-73 (quoting Alvarez, 246 N.J. Super. at 148-49).

A-1150-23

Defendant argues the trial court erred in applying a "patent and gross abuse of discretion" standard in deciding his motion instead of the less demanding arbitrary-and-capricious standard. Defendant contends the caselaw on the issue of what standard a court should apply in deciding a Graves Act waiver motion is "less clear" and that "sound jurisprudential reasons" exist to adopt the lower standard. We disagree.

The law on the applicable standard is clear. In <u>Benjamin</u>, our Supreme Court analyzed at length the legal process for obtaining a Graves Act waiver. 228 N.J. at 368-73. The Court held that to obtain judicial review of a prosecutor's denial of a Graves Act waiver request, a defendant must demonstrate the denial was arbitrary and not arbitrary in a capricious sense[3] but "'arbitrariness constituting an unconstitutional discrimination or denial of equal protection' in the prosecutor's decision." <u>Benjamin</u>, 228 N.J. at 372 (quoting <u>Alvarez</u>, 246 N.J. Super. at 148). Contrary to defendant's assertion, that more demanding standard does not align "more closely with the 'abuse of discretion' standard than with the 'patent and gross abuse of discretion' standard."

---

[3] <u>See</u> <u>In re State & Sch. Emps.' Health Benefits Comm'ns' Implementation of Yucht</u>, 233 N.J. 267, 280 (2018) (describing the arbitrary-and-capricious standard as a determination of whether the decision under review "conforms with relevant law," is supported by "substantial credible evidence," and is not "clearly" erroneous).

The Court's meaning is clear. The Court described Alvarez as holding defendants were allowed "to appeal the denial of a waiver to the assignment judge upon a showing of patent and gross abuse of discretion by the prosecutor." Id. at 364 (citing Alvarez, 246 N.J. Super. at 146-49). The Court cited Watson and quoted its holding that a "defendant must show 'prosecutor's refusal [was] a patent and gross abuse of discretion.'" Benjamin, 228 N.J. at 372 (alteration in the original) (quoting Watson, 346 N.J. at 535). If the Court believed "a patent and gross abuse of discretion" was not the correct standard, it would have said so and it wouldn't have referenced the holdings in Watson and Alvarez applying that standard.

Since its release, we have followed Benjamin and have reviewed Graves Act waiver decisions under "a patent and gross abuse of discretion" standard. In Rodriguez, we referenced Alvarez's adoption of "the patent and gross abuse of discretion standard" and acknowledged "[t]he Supreme Court has since confirmed that the prosecutor's decision under N.J.S.A. 2C:43-6.2 is reviewed under this highly deferential standard." 466 N.J. Super. at 97 (first citing Alvarez, 246 N.J. Super. at 147-48; and then citing Benjamin, 228 N.J. at 364). See also State in Interest of E.S., 470 N.J. Super. 9, 22 n.2 (App. Div. 2021) (acknowledging the application of the patent and gross abuse of discretion

14

standard in reviewing Graves Act waiver denials), aff'd as modified on other grounds, 252 N.J. 331 (2022); State v. Andrews, 464 N.J. Super. 111, 120 (App. Div. 2020) (same).  We perceive no lack of clarity in the caselaw regarding the application of the patent and gross abuse of discretion standard in reviewing Graves Act waiver decisions.

Defendant argues "sound jurisprudential reasons" exist to employ the lower arbitrary-and-capricious standard and contends Benjamin and Rodriguez reflect "confusion."  We don't see any confusion in those decisions.  Even if we disagreed with the Court, and we don't, we can't reverse the Supreme Court. "[A]s an intermediate appellate court, we are bound by the Supreme Court's holdings and dicta."  State v. Jones, __ N.J. Super. ___, ___ (App. Div. 2024) (slip op. at 27); see also Bacon v. Atl. City Transp. Co., 72 N.J. Super. 541, 547 (App. Div. 1962) (declining to review authorities standing for a legal doctrine the Supreme Court had subsequently rejected, we recognized the Appellate Division is "an intermediate appellate tribunal, bound by the final determinations of our Supreme Court").  Accordingly, we conclude the trial court appropriately decided defendant's motion under a patent and gross abuse of discretion standard.

And we perceive no error in the court's determination defendant failed to meet that standard. Under that "highly deferential standard," the "reviewing court . . . does not have the authority to substitute its own discretion for that of the prosecutor" and a "defendant must demonstrate that 'the prosecutor's decision failed to consider all relevant factors, was based on irrelevant or inappropriate factors, or constituted a "clear error in judgment."'" Rodriguez, 466 N.J. Super. at 97 (quoting State v. Nwobu, 139 N.J. 236, 247 (1995)); see also State v. Watkins, 193 N.J. 507, 520 (2008) (defining "[a] patent and gross abuse of discretion . . . as a decision that 'has gone so wide of the mark sought to be accomplished . . . that fundamental fairness and justice require judicial intervention'" (quoting State v. Wallace, 146 N.J. 576, 582-83 (1996))). A "clear error of judgment" is one that is so "clearly unreasonable so as to shock the judicial conscience" and that "could not have reasonably been made upon a weighing of the relevant factors." Nwobu, 139 N.J. at 253-54 (quoting State v. Roth, 95 N.J. 334, 365 (1984)).

The trial court thoroughly reviewed the State's reasons for denying defendant's waiver request. The court gave in depth consideration to the applicable aggravating and mitigating factors, adopting a mitigating factor not found by the State. The court analyzed the comparison cases provided by

defendant and found they "contain[ed] significant differences from the present matter," with "[m]any of them appear[ing] to have proof issues which impact[] the State's analysis as to the likelihood of conviction" and a number of them "involv[ing] defendants with minimal criminal histories or no prior gun adjudications or convictions." The court correctly found the State's denial of defendant's Graves Act waiver request was not a patent and gross abuse of discretion given the distinct circumstances of the case: a defendant with numerous prior adjudications of delinquency, including for unlawful possession of a handgun, who was arrested after disobeying a police order and fleeing and who allegedly possessed a loaded ghost gun with an additional twenty-five rounds of ammunition in an illegal large-capacity magazine.

Finally, we perceive no error in the trial court's denial of defendant's alternative requested relief: production of the State's cumulative file of Graves Act waiver decisions. In <u>Benjamin</u>, the Court expressly held "defendants are not entitled to discovery of a prosecutor's case-specific memorializations and cumulative files when challenging the denial of a Graves Act waiver in an <u>Alvarez</u> motion because there are sufficient procedural safeguards in place for meaningful judicial review of a prosecutor's waiver decision." 228 N.J. at 375; <u>see also</u> <u>Rodriguez</u>, 466 N.J. Super. at 100 (recognizing "a defendant is not

entitled to discovery of the prosecution's files for cases in which Graves Act waivers have been granted to other defendants"); <u>Andrews</u>, 464 N.J. Super. at 122 (same). We see no reason not to apply the Supreme Court's holding in this case.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1150-23