SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Zaire J. Cromedy (A-17-24) (089188)**

**Argued March 17, 2025 -- Decided August 5, 2025**

**NORIEGA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a conviction under N.J.S.A. 2C:39-5(j), a subsection of the unlawful weapons possession statute, is subject to a mandatory parole disqualifier pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).

In August 2021, police arrested defendant on an outstanding warrant for a robbery charge. During his arrest, police located a handgun believed to belong to defendant, and he was charged accordingly. Defendant pled guilty to first-degree unlawful possession of a weapon pursuant to N.J.S.A. 2C:39-5(b)(1) and to N.J.S.A. 2C:39-5(j), which is a first-degree crime when a person with a prior conviction subject to the No Early Release Act (NERA) commits an unlawful possession of a weapon offense under N.J.S.A. 2C:39-5(a), (b), (c), or (f).

Defense counsel argued that subsection (j) should not carry a mandatory period of parole ineligibility because the crime is not among the offenses that the Graves Act expressly enumerates. The State countered that subsection (j) is a grading statute that incorporates the language of subsection (b), an offense that the Graves Act expressly includes, and urged the court to read the two subsections in tandem. The sentencing judge rejected defendant's argument and imposed a Graves Act parole disqualifier. The Appellate Division affirmed. 478 N.J. Super. 157, 168 (App. Div. 2024). The Court granted certification. 258 N.J. 576 (2024).

**HELD:** N.J.S.A. 2C:39-5(j) falls outside the scope of the Graves Act. It sets forth a distinct substantive offense that must be charged independently, even though it is cognizable only when paired with a corresponding prior offense under N.J.S.A. 2C:39-5(a), (b), (c), or (f).

1. N.J.S.A. 2C:39-5 governs the unlawful possession of weapons in New Jersey. Subsections (a), (b), (c), and (f) define crimes based on the type of weapon; subsection (j) establishes that "[a] violation of subsection a., b., c. or f. of this section by a person who has a prior conviction of any of the crimes enumerated in [NERA] is a first degree crime." The Graves Act prescribes a minimum term of

1

incarceration for certain firearm-related offenses. As relevant here, the Act provides that "[a] person who has been convicted under . . . subsection a., b., c., or f. of N.J.S.A. 2C:39-5 . . . shall be sentenced to a term of imprisonment by the court," including a period of parole ineligibility. N.J.S.A. 2C:43-6(c). In 2013, the Legislature simultaneously amended the unlawful possession of weapons statute and the Graves Act. It added subsection (j) to N.J.S.A. 2C:39-5 and added N.J.S.A. 2C:39-5(f) to the Graves Act, but the Legislature did not add subsection (j) to the list of offenses subject to, or expressly exempt from, the Graves Act. (pp. 10-12)

2. A straightforward reading of N.J.S.A. 2C:39-5(j) reveals that it sets forth a substantive offense comprised of two distinct elements. First, the State must prove that the defendant violated N.J.S.A. 2C:39-5(a), (b), (c), or (f). Next, the State must prove that the defendant has a prior conviction subject to NERA. If the State proves both elements beyond a reasonable doubt, the defendant is guilty of a first-degree substantive crime. This conviction does not elevate the defendant's conviction for a second-degree crime under subsections (a), (b), (c), or (f). Rather, it results in a separate, first-degree offense. The Graves Act does not mention N.J.S.A. 2C:39-5(j), and therefore a sentence under that provision does not carry the Graves Act's mandatory period of parole ineligibility. The Court explains how N.J.S.A. 2C:39-5(h) and (i) support that analysis. Most importantly, though, if the Legislature had intended for subsection (j) to trigger the Graves Act's mandatory minimums and parole ineligibility periods, it could have included that provision expressly in N.J.S.A. 2C:43-6(c), as it did with other subsections. That it did not do so -- especially when simultaneously amending the statutes to create subsection (j) and broadening the reach of the Graves Act -- is a legislative choice, and not one the courts are free to override under the guise of avoiding an allegedly undesirable or unexpected outcome. The Court therefore holds that subsection (j) constitutes a substantive first-degree crime, not a sentencing enhancement, and is not subject to the Graves Act. The Court explains that trial courts must conduct a bifurcated trial, severing proceedings for subsection (j) from prior proceedings for the possessory charge. (pp. 12-16)

3. The Court addresses issues raised by the appellate court that warrant further discussion. First, it clarifies the distinction between grading provisions and sentencing enhancements. Whereas grading provisions create separate crimes, sentencing enhancements modify or add to the penalties that apply within or beyond the baseline range, typically through mandatory minimums, periods of parole ineligibility, or extended terms. For prosecutors, the grading of an offense is critical in determining which elements must be charged, what evidence is necessary to prove those elements, and how to structure the indictment. By contrast, sentencing provisions or post-sentencing provisions, like those found in subsections (h) and (i) of N.J.S.A. 2C:39-5, operate only after conviction. Second, the Court explains that the Appellate Division based its decision, in part, on what it perceived to be an

2

"absurd" outcome: that a defendant convicted under subsection (j) of N.J.S.A. 2C:39-5, a first-degree crime, might not be subject to the Graves Act's mandatory minimum term, while a defendant convicted of a second-degree weapons offense could be. But a first-degree offense carries a broad sentencing range -- ten to twenty years -- pursuant to N.J.S.A. 2C:43-6(a)(1). Within that range, courts retain discretion to impose a sentence that reflects the seriousness of the conduct and the individual circumstances of the defendant. The sentencing court is not compelled to impose the lowest possible sentence. And certainly, a conviction under subsection (j), which requires a recidivist offender with a NERA conviction, is unlikely to receive the minimum sentence absent compelling mitigating factors. Even in those rare cases, the sentencing courts retain discretion to impose a longer term consistent with the statutory range. Any perceived disparity in sentencing exposure between different degrees of offenses does not justify judicial revision of the statutory scheme. (pp. 16-23)

**REVERSED and REMANDED for resentencing.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and HOFFMAN join in JUSTICE NORIEGA's opinion.**

State of New Jersey,

Plaintiff-Respondent,

v.

Zaire J. Cromedy,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
478 N.J. Super. 157 (App. Div. 2024).

| Argued | Decided |
|--------|---------|
| March 17, 2025 | August 5, 2025 |

Daniel S. Rockoff, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Daniel S. Rockoff, of counsel and on the briefs).

Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Jennifer E. Kmieciak, of counsel and on the briefs).

Jeffrey S. Farmer argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Mazraani & Liguori, attorneys; Joseph M. Mazraani, of counsel, and Jeffrey S. Farmer, of counsel and on the brief).

The New Jersey Criminal Code is designed to give fair warning of both the prohibited conduct and the potential penalties upon conviction, including those provisions that may enhance penalties. The Graves Act is such a provision, and therefore defendants must receive fair warning of its applicability. In this appeal, we consider whether a conviction under N.J.S.A. 2C:39-5(j), a subsection of the unlawful weapons possession statute, is subject to a mandatory parole disqualifier pursuant to the Graves Act, N.J.S.A. 2C:43-6(c). N.J.S.A. 2C:39-5(j) is a first-degree crime when a person with a prior conviction subject to the No Early Release Act (NERA) commits an unlawful possession of a weapon offense under N.J.S.A. 2C:39-5(a), (b), (c), or (f). The Graves Act expressly imposes mandatory periods of parole ineligibility for convictions under N.J.S.A. 2C:39-5(a), (b), (c), and (f), but does not list N.J.S.A. 2C:39-5(j).

Nonetheless, the trial court here sentenced defendant Zaire J. Cromedy to a term of imprisonment that included a Graves Act parole disqualifier, based on a plea to a single count in an indictment that charged violations of both N.J.S.A. 2C:39-5(b) and (j). The Appellate Division affirmed, reasoning that subsection (j) is merely "a grading statute" that enhances the degree of the

2

conviction for subsection (b) and thereby permits a sentencing judge to impose a first-degree penalty subject to the Graves Act.

Our task in interpreting unambiguous statutes is to apply their plain language in a manner that advances the Legislature's intent. Applying that principle here, we conclude that N.J.S.A. 2C:39-5(j) falls outside the scope of the Graves Act. It sets forth a distinct substantive offense that must be charged independently, even though it is cognizable only when paired with a corresponding prior offense under N.J.S.A. 2C:39-5(a), (b), (c), or (f). Accordingly, we reverse the judgment of the Appellate Division and remand the matter for resentencing consistent with this opinion.

I.

A.

In August 2021, police arrested defendant on an outstanding warrant for a robbery charge. During his arrest, police located a handgun believed to belong to defendant, and he was charged accordingly. Among various offenses, the State charged defendant with a violation of N.J.S.A. 2C:39-5(j), based on a 2017 conviction for reckless manslaughter, a crime subject to NERA, N.J.S.A. 2C:43-7.2(d)(2). Thereafter, a grand jury returned two separate indictments. The first charged defendant with two offenses: (1) second-degree eluding, contrary to N.J.S.A. 2C:29-2(b), and (2) first-degree

3

unlawful possession of a weapon, in violation of both N.J.S.A. 2C:39-5(b)(1) and N.J.S.A. 2C:39-5(j). The second indictment charged defendant with certain persons not to possess a firearm, contrary to N.J.S.A. 2C:39-7(b).

Pursuant to a plea agreement, the State agreed to recommend a ten-year sentence with a mandatory five-year period of parole ineligibility under the Graves Act, in exchange for defendant's guilty plea to first-degree unlawful possession of a weapon pursuant to N.J.S.A. 2C:39-5(b)(1) and N.J.S.A. 2C:39-5(j). In return, the State agreed to dismiss the eluding and certain persons charges. Defense counsel reserved the right to argue at sentencing that the Graves Act does not apply to N.J.S.A. 2C:39-5(j).

At sentencing, defense counsel argued that subsection (j) should not carry a mandatory period of parole ineligibility because the crime is not among the offenses that the Graves Act expressly enumerates. The State countered that subsection (j) is a grading statute that incorporates the language of subsection (b), an offense that the Graves Act expressly includes. Accordingly, the State urged the court to read the two subsections in tandem to give effect to the legislative intent of imposing mandatory minimums for first-degree firearms offenses. The sentencing judge rejected defendant's argument and imposed the agreed-upon sentence of ten years' imprisonment with a five-year parole disqualifier, as per the Graves Act.

4

B.

The Appellate Division affirmed the sentence. Without a specific finding that the statute was ambiguous or unclear, the appellate court sought to interpret the statute "in conformity with its dominating general purpose." State v. Cromedy, 478 N.J. Super. 157, 165 (App. Div. 2024) (quoting Herman & MacLean v. Huddleston, 459 U.S. 375, 387 n.23 (1983)). The court principally relied on the Sponsors' Statement accompanying the 2013 amendments to the Graves Act as evidence of legislative intent to cover subsection (j) within the Graves Act. Id. at 166. The court noted that, although the Legislature enacted N.J.S.A. 2C:39-5(j) on the same day it explicitly exempted other specified offenses from the Graves Act, it was not persuaded as to legislative intent to exclude subsection (j). Ibid. The Appellate Division concluded that because the Sponsors' Statement did not expressly exempt first-degree unlawful weapons offenses, the Legislature did not intend to do so. Ibid.

The appellate court further reasoned that accepting defendant's argument would produce an absurd result because a defendant convicted under subsection (j) without a mandatory minimum could become parole eligible before a similarly situated second-degree offender with a Graves Act sentence. Id. at 167. The court concluded that it would therefore be "more sensible" to

5

treat subsection (j) as a grading statute rather than a substantive offense excluded from Graves Act coverage.  Ibid.

To illustrate its logic, the appellate court cited N.J.S.A. 2C:14-2(a)(1), the sexual assault statute.  Ibid.  Relying on State v. Drury, 190 N.J. 197, 210 (2007), the court noted that certain crimes, like sexual assault, may be upgraded from a second- to first-degree crime under specific aggravating circumstances.  Ibid.

"By virtue of upgrading an unlawful weapons possession offense where a defendant had a prior NERA conviction, the Legislature intended that first-degree offenses become subject to the Graves Act," the Appellate Division concluded.  Id. at 168.  The appellate court also determined that the grading effect of subsection (j) "is not a consideration for the jury because defendant's prior conviction speaks for itself."[1]  Id. at 170.

We granted certification.  258 N.J. 576 (2024).  We also granted leave to appear as amicus curiae to the Association of Criminal Defense Lawyers of New Jersey (ACDL).

---

[1]  Given our conclusion in this case, we need not reach the issue of how the model jury charges impact the issue under review.  However, the Appellate Division recommended that the Model Jury Charge Committee revise its guidance for N.J.S.A. 2C:39-5(j).  Id. at 171.  We instead find that the current jury instructions for the provision are in line with this opinion and do not require reconsideration.

6

II.

Defendant argues that the plain language of both N.J.S.A. 2C:39-5(j) and the Graves Act demonstrates that subsection (j) is a standalone substantive offense not subject to the Graves Act's mandatory parole disqualifier. Defendant contends that subsection (j) unambiguously creates a first-degree crime for which an offender may be charged and convicted independently of other provisions within N.J.S.A. 2C:39-5. In support, defendant emphasizes that subsection (j) expressly refers to itself as "a first degree crime," which is, in defendant's view, sufficient to establish a separate substantive offense.

Defendant further argues that because the Graves Act does not list subsection (j) among its enumerated offenses, a conviction under subsection (j) does not trigger the Graves Act's mandatory period of parole ineligibility.

The ACDL similarly contends that subsection (j) is a substantive offense and not a sentencing enhancement. The ACDL underscores that the Graves Act does not reference subsection (j) and urges the Court not to "perform judicial surgery" by effectively inserting subsection (j) into a statute where it does not appear. If the omission of subsection (j) was a legislative oversight, the ACDL argues, the proper remedy lies with the Legislature, not the courts. In the ACDL's view, the plain language of the statute compels the conclusion

that a conviction under subsection (j) results in a flat sentence without a mandatory period of parole ineligibility.

The State counters that the text and structure of N.J.S.A. 2C:39-5(j) reflect that it operates as a sentencing enhancement rather than a separate substantive offense. The State maintains that subsection (j) functions to elevate the degree of other firearms possession offenses when committed by a defendant with a prior NERA conviction. The State also distinguishes subsection (j) from the certain persons statute, N.J.S.A. 2C:39-7, noting that the certain persons statute exists in a separate statutory section, does not cross-reference N.J.S.A. 2C:39-5, and creates a distinct second-degree offense. In contrast, the State argues, subsection (j) explicitly refers to violations of subsections (a), (b), (c), and (f), thereby serving its role as a grading provision.

According to the State, the Graves Act does not need to enumerate subsection (j) because it already includes the underlying offenses that subsection (j) upgrades. Legislative history, the State argues, confirms that subsection (j) was enacted to impose harsher penalties on recidivist offenders with prior NERA convictions. In the State's view, to exclude such defendants from the Graves Act would produce an absurd result, potentially allowing repeat offenders to serve less time than first-time offenders convicted of second-degree weapons charges. Therefore, the State asserts, it would be

8

illogical for the Legislature to have simultaneously increased the degree of the offense while exempting such offenders from the very parole ineligibility provisions meant to enhance punishment.

III.

A.

We review decisions construing a statute de novo, owing no deference to the analysis of trial or appellate courts. State v. Higginbotham, 257 N.J. 260, 280 (2024). "When interpreting a statute, the Legislature's intent is paramount to a court's analysis, and the plain language of the statute is crucial to determining legislative intent." In re Est. of Jones, 259 N.J. 584, 595 (2025) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). Accordingly, we begin our analysis "with the plain language of the statute" and turn "to extrinsic evidence only when . . . 'ambiguity in the statutory language'" allows for "more than one plausible interpretation." Ibid. (quoting DiProspero, 183 N.J. at 492). "We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Musker v. Suuchi, Inc., 260 N.J. 178, 185 (2025) (quoting DiProspero, 183 N.J. at 492). "If the plain language of a statute is clear, our task is complete." Id. at 186 (quoting Savage v. Township of Neptune, 257 N.J. 204, 215 (2024)).

9

As we have long held, it is not the role of the Court to

> "rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002). We cannot "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment," Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952), or "engage in conjecture or surmise which will circumvent the plain meaning of the act," In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980). "Our duty is to construe and apply the statute as enacted." Ibid.
>
> [DiProspero, 183 N.J. at 492 (alteration in original).]

### B.

N.J.S.A. 2C:39-5 governs the unlawful possession of weapons in New Jersey. Subsections (a), (b), (c), and (f) define crimes based on the type of weapon -- i.e., machine guns, handguns, rifles and shotguns, and assault firearms, respectively -- and their designated degree of severity. N.J.S.A. 2C:39-5(a), (b), (c), (f). Subsection (j) establishes that "[a] violation of subsection a., b., c. or f. of this section by a person who has a prior conviction of any of the crimes enumerated in [NERA] is a first degree crime." Id. at (j).

Our analysis of subsection (j) is informed by a review of neighboring subsections (h) and (i). Subsection (h) provides that "[a] person who is convicted of a crime under subsection a., b., f. or j. of this section shall be ineligible for participation in any program of intensive supervision." N.J.S.A.

10

2C:39-5(h). Subsection (i) provides that "[a] person convicted of violating subsection a., b. or f." must be sentenced to a term of imprisonment and may face the imposition of a minimum period of parole ineligibility if certain aggravating factors apply. N.J.S.A. 2C:39-5(i).

C.

The Graves Act, N.J.S.A. 2C:43-6(c), "prescribes a minimum term of incarceration for certain firearm-related offenses." State v. Benjamin, 228 N.J. 358, 360 (2017). Specifically, the Act "makes the use or possession of a firearm during the commission, attempted commission, or flight from the commission of certain designated offenses a sentencing factor that triggers the imposition of a mandatory term of imprisonment." Id. at 367 (quoting State v. Franklin, 184 N.J. 516, 529 (2005)).

As relevant to this case, the Graves Act provides that

> [a] person who has been convicted under . . . subsection a., b., c., or f. of N.J.S.[A.] 2C:39-5 . . . shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at one-half of the sentence imposed by the court or 42 months, whichever is greater . . . , during which the defendant shall be ineligible for parole.
>
> [N.J.S.A. 2C:43-6(c).]

In 2013, the Legislature simultaneously amended the unlawful possession of weapons statute and the Graves Act. It added subsection (j) to

11

N.J.S.A. 2C:39-5.  L. 2013, c. 113, § 1.  It also added N.J.S.A. 2C:39-5(f) to the Graves Act.  Id. § 2.  The Legislature did not add subsection (j) to the list of offenses subject to, or expressly exempt from,[2] the Graves Act.

## IV.

## A.

We begin our analysis, as we must, with the plain language of the statute, which directly answers whether subsection (j) falls within the scope of the Graves Act.  It does not.

A straightforward reading of N.J.S.A. 2C:39-5(j) reveals that it sets forth a substantive offense comprised of two distinct elements:  (1) a predicate violation that triggers liability and (2) criteria for determining the degree of the offense.  Thus, to secure a conviction for the "first degree crime" that subsection (j) establishes, the State must first prove that the defendant violated N.J.S.A. 2C:39-5(a), (b), (c), or (f).  Next, the State must prove that the defendant has a prior conviction subject to NERA.  If the State proves both elements beyond a reasonable doubt, the defendant is guilty of a first-degree substantive crime.  This conviction does not elevate the defendant's conviction

---

[2]  The Graves Act expressly exempts violations of N.J.S.A. 2C:39-5(b)(2), which governs air guns, spring guns, or similar weapons that use forces like springs, elastic bands, or compressed air as a propelling force.  N.J.S.A. 2C:43-6(d)(2).

12

for a second-degree crime under subsections (a), (b), (c), or (f). Rather, it results in a separate, first-degree offense into which the second-degree offense will merge at the time of sentencing. N.J.S.A. 2C:1-8(a)(1).

After merger, a defendant faces the sentencing range for a first-degree offense as prescribed in N.J.S.A. 2C:43-6(a), namely, a term of imprisonment of ten to twenty years, "[e]xcept as otherwise provided." The exceptions, scattered throughout the Criminal Code, impose modified or mandatory penalties for particular offenses. Of relevance here is the Graves Act, N.J.S.A. 2C:43-6(c), which mandates a period of parole ineligibility for certain enumerated offenses, including subsections (a), (b), (c), or (f) of N.J.S.A. 2C:39-5, as well as N.J.S.A. 2C:39-7(a), (b)(2), or (b)(3) (prohibiting certain persons from possessing weapons). The Graves Act does not mention N.J.S.A. 2C:39-5(j), and therefore a sentence under that provision does not carry the Graves Act's mandatory period of parole ineligibility.

In sum, under a plain reading of the relevant statutes, a count in an indictment charging first-degree unlawful possession of a weapon under N.J.S.A. 2C:39-5(j) places defendants on notice that they face a first-degree charge punishable by ten to twenty years of incarceration. The elements the State must prove are: (1) a current violation of subsection (a), (b), (c), or (f) of N.J.S.A. 2C:39-5 and (2) a prior NERA-qualifying conviction. Because

13

subsection (j) is not included among the offenses referenced in any statute imposing mandatory minimum terms or sentencing enhancements, including the Graves Act, a defendant would reasonably expect to be sentenced under the ordinary range for a first-degree offense. This interpretation aligns with the foundational principle that our criminal statutes must "give fair warning of the nature of the sentences that may be imposed on conviction of an offense." N.J.S.A. 2C:1-2(b)(5).

A review of N.J.S.A. 2C:39-5(h) and (i) supports our analysis. Subsection (h), for example, refers to subsection (j) as a "crime" for which one can be "convicted," and it includes subsection (j) in a list of substantive offenses. Like subsection (j), subsection (i) also refers to earlier violations set forth in (a), (b), or (f), but with a significant variation that reveals legislative intent: subsection (i) prescribes parole ineligibility periods and mandatory minimum terms that "[a] person <u>convicted</u> of violating subsection a., b., or f. of this section shall be sentenced" to by the court (emphasis added), whereas subsection (j) applies to "<u>a violation</u> of subsection a., b., c., or f. of this section" (emphasis added). The use of <u>convicted</u> in subsection (i) reflects a clear intent to establish sentencing consequences, not merely to define the degree of the offense -- a point reinforced by the sentencing instructions that follow. In subsection (i), the Legislature demonstrated it knew precisely how

14

to construct a sentencing provision. By contrast, subsection (j) makes no reference to sentencing enhancements or parole ineligibility. The contrast reinforces the conclusion that subsection (j) does not implicate the Graves Act or other mandatory sentencing provisions.

Most importantly, though, if the Legislature had intended for subsection (j) to trigger the Graves Act's mandatory minimums and parole ineligibility periods, it could have included that provision expressly in N.J.S.A. 2C:43-6(c), as it did with other subsections. That it did not do so -- especially when simultaneously amending the statutes to create subsection (j) and broadening the reach of the Graves Act -- is a legislative choice, and not one the courts are free to override under the guise of avoiding an allegedly undesirable or unexpected outcome.

We therefore hold that subsection (j) constitutes a substantive first-degree crime, not a sentencing enhancement, and is not subject to the Graves Act. The State must present the elements of subsection (j) to a jury and prove them beyond a reasonable doubt. However, because the existence of a prior NERA conviction is a necessary element of the first-degree charge, but also a prejudicial fact if introduced prematurely, trial courts must conduct a bifurcated trial, severing proceedings for subsection (j) from prior proceedings for the possessory charge. Mirroring the proceedings used in cases of a certain

15

persons offense under N.J.S.A. 2C:39-7, trial courts may use the same jury that has rendered a guilty verdict on the underlying N.J.S.A. 2C:39-5 weapons offense to hear evidence in the subsequent trial on the first-degree subsection (j) offense.

B.

Although we find the plain language of the statute dispositive, we briefly address several issues raised by the appellate court that warrant further discussion.

1.

First, the Appellate Division conflated the concept of grading provisions with sentencing enhancements, which we must clarify. Although the Code does not formally define "grading," the term is firmly entrenched in the lexicon of criminal law practice and jurisprudence. "Grading" is "[t]he fixing of a criminal offense at a level of seriousness, such as first degree, second degree, or third degree (in reference to a felony)." Black's Law Dictionary 838 (12th ed. 2024). The distinction between grades depends on specific elements.[3] Some statutes define the relevant offense and then establish the grades of that offense in clearly labeled subsections. See, e.g., N.J.S.A.

---

[3] For the sake of succinctness, our analysis of grading intentionally leaves out non-felony offenses that are present throughout the Code.

16

2C:20-11 (subsection (b) defines shoplifting, and subsection (c), titled "Gradation," sets offense degrees based on value of merchandise); N.J.S.A. 2C:15-1 (subsection (a) defines robbery and subsection (b), titled "Grading," sets forth the degree of the offense based upon the presence of a weapon, potential for or actual harm caused).

Other statutes embed grading directly within the offense definition. For example, N.J.S.A. 2C:12-1 is structured to define the offense of assault in multiple degrees, beginning with simple assault in subsection (a), followed by aggravated assault in subsection (b), each with detailed elements. Subsection (b), which defines thirteen forms of aggravated assault, includes an internal grading provision that assigns the degree of each offense based on the nature of the conduct, the status of the victim, or the surrounding circumstances. Likewise, N.J.S.A. 2C:14-2 grades sexual assault based on a series of factors including age, relationship, and harm to the victim, which must be separately proven beyond a reasonable doubt.

By either method, those statutes create a "graded offense," which is "[a] crime that is divided into various degrees of severity with corresponding levels of punishment." Black's Law Dictionary 1297 (12th ed. 2024). Thus, N.J.S.A. 2C:39-5 makes unlawful possession of a weapon a graded offense, and subsection (j) is in fact a grading provision; it makes the crime a first-

17

degree offense when accompanied by a prior NERA conviction. Subsection (j) does not enhance the sentence for an already-defined offense; it defines a distinct, first-degree offense that arises only when the two elements we describe above are met.

Both the trial court and appellate court erred in conflating grading provisions with sentencing enhancements. While those concepts are sometimes discussed interchangeably in shorthand, they are doctrinally and functionally distinct. Grading determines the level of the offense, and thereby the applicable sentencing range, based on separate elements for separate crimes. Sentencing enhancements, by contrast, "increase [] a criminal defendant's punishment." Black's Law Dictionary 1642 (12th ed. 2024) (defining "sentence enhancement"). Thus, whereas grading provisions create separate crimes, sentencing enhancements modify or add to the penalties that apply within or beyond the baseline range, typically through mandatory minimums, periods of parole ineligibility, or extended terms.

The Graves Act, NERA, or extended term sentences, for example, are prototypical sentencing enhancements. Although such sentencing enhancements may result in a higher sentence that mirrors the penalty for a higher-degree crime, they do not operate as elements of the offense itself. Rather, enhancements apply only to sentencing -- "[t]he judicial determination

18

of the penalty for a crime," Black's Law Dictionary 1642 (12th ed. 2024) (defining "sentencing") (emphasis added) -- and therefore apply after a conviction is secured and serve to increase the punishment based on additional facts, often related to the defendant's conduct, prior convictions, or the manner in which the offense was committed. An enhancement may raise the sentence to what would otherwise be imposed for a higher-degree crime, but it does not equate to a conviction for that higher-degree offense.

The distinction between grading and sentencing is not merely academic; it has practical consequences for how a case proceeds through the criminal justice system. For prosecutors, the grading of an offense is critical in determining which elements must be charged, what evidence is necessary to prove those elements, and how to structure the indictment. State v. Hodde, 181 N.J. 375, 380-81 (2004) (recognizing that facts in a statute's grading provisions, like multiple thefts that were part of a single scheme, or harm to a kidnapping victim, are elements that must be proven to a jury). "[W]e have expressly recognized that [grading] provisions [] contain facts that the State must prove to warrant a conviction." Ibid.

The degree of the offense dictates not only the seriousness of the charge, but also essential facts that must be presented to the grand jury and ultimately proven beyond a reasonable doubt to the trial jury. State v. Federico, 103 N.J.

19

169, 176 (1986) (ruling that the kidnapping statute's "unharmed release provision," contained in the "grading" subsection of the statute, must be treated as an element of the offense); State v. Rolon, 199 N.J. 575, 576, 585-86 (2009) (interpreting the phrase "armed with a deadly weapon," which is used in the grading provision of the robbery statute, to elevate the crime from second- to first-degree and holding that degree-elevating facts are elements that must be found by the jury).

By contrast, sentencing provisions or post-sentencing provisions, like those found in subsections (h) and (i) of N.J.S.A. 2C:39-5, operate only after conviction. The State may, at sentencing, invoke these provisions to affect the scope or severity of the penalty. For instance, subsection (i) is a sentencing provision: it imposes consequences after a conviction has been secured. Similarly, subsection (h)'s restriction from the intensive supervision program for those convicted of specific weapons offenses is available only after conviction. Conversely, subsection (j) contains no such language; it simply provides that a violation under certain circumstances "is a first degree crime." That language pertains to grading, not sentencing.

To underscore the distinction: a grading provision creates or reclassifies an offense based on certain elements that must be found by a jury. A sentencing enhancement increases the punishment for an already-convicted

20

offense.  Subsection (j) plainly falls in the former category.  It makes unlawful possession of a weapon a first-degree offense when combined with a prior NERA conviction.  It does not impose an additional penalty only upon conviction.

2.

The Appellate Division also based its decision, in part, on what it perceived to be an "absurd" outcome:  that a defendant convicted under subsection (j) of N.J.S.A. 2C:39-5, a first-degree crime, might not be subject to the Graves Act's mandatory minimum term, while a defendant convicted of a second-degree weapons offense could be.  The court reasoned that such a framework could allow the first-degree offender to be released earlier than the second-degree offender, depending on the sentence imposed.  Thus, a defendant sentenced to a ten-year term of imprisonment after a second-degree conviction (the highest sentence permitted for a second-degree conviction), subject to the Graves Act would be ineligible for parole for five-years, whereas a defendant sentenced to ten-years' imprisonment following a first-degree conviction (the lowest permissible sentence for a first-degree conviction) under subsection (j) without a Graves Act parole disqualifier might be eligible for parole sooner than five years.

21

This is not an absurd result; it is a consequence of the sentencing range the Legislature has established coupled with its selective application of sentencing enhancements. A first-degree offense carries a broad sentencing range -- ten to twenty years -- pursuant to N.J.S.A. 2C:43-6(a)(1). Within that range, courts retain discretion to impose a sentence that reflects the seriousness of the conduct and the individual circumstances of the defendant. The sentencing court is not compelled to impose the lowest possible sentence, and nothing in subsection (j) precludes the imposition of a sentence at the higher end of the first-degree range if appropriate aggravating factors exist. And certainly, a conviction under subsection (j), which requires a recidivist offender with a NERA conviction, is unlikely to receive the minimum sentence absent compelling mitigating factors. Even in those rare cases, the sentencing courts retain discretion to impose a longer term consistent with the statutory range.

The fact that mandatory minimums survive merger further mitigates against any perceived absurdity. See State v. Dillihay, 127 N.J. 42, 45 (1992). As earlier noted, the Graves Act expressly lists subsections (a), (b), (c), and (f) of N.J.S.A. 2C:39-5, so convictions under those provisions "shall include the imposition of a [mandatory] minimum term." N.J.S.A. 2C:43-6(c). Therefore, if a person were convicted of a violation of N.J.S.A. 2C:39-5(b) and sentenced

22

to ten years with five years' parole ineligibility, and also convicted of a violation of N.J.S.A. 2C:39-5(j) and sentenced to the maximum sentence permissible of twenty years with no period of parole ineligibility, the convictions would merge to a sentence of twenty years with five years of parole ineligibility.  See ibid.

This argument also ignores the tools a trial judge already possesses to sentence a defendant to a discretionary minimum term of parole ineligibility, beyond those contained in the Graves Act.  Under N.J.S.A. 2C:43-6(b), for example, where "[a]s part of a sentence for any crime, . . . the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors, as set forth in [N.J.S.A. 2C:44-1(a) and (b)], or the court finds that the aggravating factor set forth in [N.J.S.A. 2C:44-1(a)(5)] applies, the court may fix a minimum term not to exceed one-half of the term set . . . , during which the defendant shall not be eligible for parole . . . ."  Therefore, even without the Graves Act, a court can sentence a person convicted of violating only N.J.S.A. 2C:39-5(j) to a period of parole ineligibility pursuant to N.J.S.A. 2C:43-6(b).

In any event, any perceived disparity in sentencing exposure between different degrees of offenses does not justify judicial revision of the statutory scheme.

23

V.

For those reasons, we reverse the judgment of the Appellate Division and remand the matter for resentencing consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and HOFFMAN join in JUSTICE NORIEGA's opinion.

24